### J. V. TOMBERLIN v. R. W. LONG, TRADING AND DOING BUSINESS AS LONG CONSTRUCTION COMPANY.

(Filed 2 July, 1959.)

**1. Contracts § 19—**

A novation is the substitution of a new contract for an existing valid contract by agreement of the parties, and ordinarily the parties must have intended that the new agreement should be in substitution for and extinguishment of the old.

**2. Same—**

Where a second contract deals with the subject matter of a prior contract between the parties so completely that its legal effect is to rescind or abrogate the prior agreement, the question of novation is one of law for the court, but where the second agreement does not show on its face that it must have been intended as a substitution for the prior agreement, and the facts relating to the intent of the parties are controverted, the question of intent is for the jury.

**3. Same— Whether second agreement was intended as a substitution of prior contract held for jury on conflicting evidence.**

Plaintiff alleged that defendant agreed to subcontract certain work to plaintiff and to lease certain equipment from plaintiff, and that thereafter defendant leased certain equipment in lieu of subcontracting the work to plaintiff. Defendant averred that he subcontracted the work to plaintiff, that plaintiff commenced performance under the subcontract and then breached said subcontract, forcing plaintiff to lease the equipment. *Held:* Whether the parties intended the lease agreement to be in substitution for the subcontract is a question for the jury upon conflicting evidence, and it was error for the court to hold as a matter of law that the lease agreement constituted a novation.

APPEAL by defendant from *Bone, J.,* at August 1958 Civil Term of NEW HANOVER.

Civil action instituted by J. V. Tomberlin as plaintiff, resident of New Hanover County, North Carolina, against R. W. Long, trading and doing business as Long Construction Company as defendant, resident of Edgecombe County, North Carolina, to recover damages for an alleged breach of contract, and on contract of lease in total sum of $5,452.46, with interest, as set forth in the complaint, to which said defendant filed an answer and cross-action against said plaintiff, alleging a breach of contract by him, and praying judgment against him in sum of $16,065.43.

Plaintiff alleges in his complaint, and defendant admits in his answer substantially the following:

(1) Plaintiff, J. V. Tomberlin, as of matters here in controversy, operates a grading, contracting and road building business, together

with the leasing of heavy equipment and moving of same to New Hanover County and throughout the State of North Carolina.

(2) Defendant is engaged in the contracting business doing road work throughout the State of North Carolina, taking contracts from the State of North Carolina for particular types of road work and hiring men to perform such contracts, and also subcontracting certain of the work contracted by him, and leasing equipment with which to perform such contract jobs.

(3) Defendant entered into a contract or contracts with the North Carolina Highway Commission to perform certain highway construction in connection with the widening and repairing of N. C. Highway #350 between Ahoskie and Aulander in the counties of Hertford and Bertie, North Carolina,—being N. C. Highway Project #1479, and

(4) During the early part of April, 1957, defendant through his agent contacted plaintiff in reference to subcontracting certain of the work defendant had so contracted to perform on said highway; and plaintiff was asked to forward to defendant certain estimates on certain phases of the construction work to be done, and to come to Ahoskie and to look over the situation; and as a consequence plaintiff did go to Ahoskie and examine the work which defendant wanted done on said Project #1479, and submit estimates which defendant had requested of him.

Plaintiff alleges in his complaint, and on trial in Superior Court offered evidence tending to show:

I. That defendant's agent informed plaintiff by phone that his price on hauling stone was a little too high, but that, if he would agree to haul the stone at $1.25 per ton, defendant would give him a contract for the work on which he had given estimates, and at that time rent a "Pay Loader" and "Motor Grader" with operators, and requested these pieces of equipment be sent to the Ahoskie area for work on said Highway #350; that defendant did not give plaintiff a contract based on his estimates, but put off and delayed the execution of one; and that, however, plaintiff did begin work on said project under agreements of defendant to pay, despite the fact that no written contract was entered into other than "the equipment lease" hereinafter set out.

II. That as a consequence of defendant's request and agreements to pay, plaintiff sent to Ahoskie (1) a "pay loader" and a "motor grader", and (2) other equipment and personnel, with operators and they began work, the rental for the equipment for April amounting to $883.88 and for May $662.69, and defendant owes plaintiff this

amount; and plaintiff's employees (1) unloaded stone from railroad cars, and placed same in roadways at an agreed price with defendant for which defendant owed plaintiff $180.00; and (2) removed from dirt and clay pits dirt and clay, and placed same in driveways as directed by defendant at agreed prices for which defendant owed plaintiff $858.75; and (3) removed stripping from dirt and clay pits at agreed price, amounting to $373.20 which defendant owed plaintiff; and (4) hauled for defendant several articles of equipment at agreed prices per unit for which defendant was due plaintiff the sum of $550.00.

III. That on 31 May, 1957, defendant decided to lease equipment of plaintiff in lieu of giving plaintiff a written contract, and on that date an "equipment lease" was entered into by and between plaintiff and defendant for certain of plaintiff's equipment for use on said road project, a copy of which lease is attached to and made a part of the complaint,— the pertinent parts of which follows:

"RENTALS: Lessee shall pay to lessor * * * aggregate rental of $2,600 per calendar month * * * beginning May 31, 1957 * * * REPAIRS: Lessor shall not be obligated to make any repairs or replacements * * * Lessee shall inspect the equipment within 48 hours after the receipt; unless within said time lessee notifies lessor, stating the details of any defects, lessee shall be conclusively presumed to have accepted the equipment in its then condition. Thereafter lessee shall effect and bear the expense of all necessary repairs, maintenance and replacements * * * LIABILITY: Lessee shall indemnify and save lessor harmless for any and all injury to or loss of the equipment from whatever cause * * * damage for any loss or injury shall be based on the then true and reasonable market value of the equipment irrespective of rentals theretofore paid or accrued."

And plaintiff testified that he delivered the articles of equipment listed in the equipment lease including house trailer; that defendant had the use of same during the month of June, 1957, and up until the 15th of July, when he returned a part of it, the rental then due was $2600 and $1300; that thereafter on units in possession of defendant rentals accumulated to a total of $1280.00; that, as to provision about damage or loss of equipment plaintiff enumerated various items, including charges for telephone in the trailer for the time defendant had it, itemized list of which was introduced in the evidence, and by consent, permitted to be inspected by the jury, and that, after crediting payments made, the defendant was indebted to plaintiff in the sum of $5,452.47.

And plaintiff alleges in his complaint, and upon trial testified, that

at time of delivery of articles of equipment under the lease of equipment of 31 May, 1957, there was a telephone installed in the house trailer office included in the lease, and that defendant agreed to have it changed to his name, but did not do so, and a total of $236.75 in charges were made for June and July, 1957, for which defendant is indebted to plaintiff.

And defendant, answering denies that he is indebted to plaintiff, and for further answer, defense and cross-action, sets up counter-claim against plaintiff averring contract by which plaintiff agreed to do certain of the work on said highway project in respect to which defendant had a profit of $16,065.43; and that on or about the 1st day of May, 1957, plaintiff commenced such work and continued working until the 30th day of May, 1957, at which time plaintiff, without any just cause therefor, wilfully and deliberately breached his contract in manner stated; and as a result thereof defendant was forced to enter into the "equipment lease" referred to in the complaint, and to use his own men and equipment and to hire other men and make other expenditures as there related, and as a result thereof defendant has been damaged, and plaintiff is indebted to him in sum of $16,065.43, for which defendant prays recovery.

And plaintiff replying, reiterates his original prayer for relief.

Upon trial in Superior Court both plaintiff and defendant testified, and each offered evidence tending to support his contentions and each moved for judgment as of nonsuit. Plaintiff's motion as to defendant's cross-action was allowed. The case was submitted to the jury under charge of the court on one issue only, to wit: "1. In what amount, if any, is the defendant indebted to the plaintiff?" which the jury answered "$4,451.24."

And to judgment signed in favor of plaintiff in accordance therewith defendant excepted and appealed to Supreme Court, and assigns error.

*Addison Hewlett, Jr., Napoleon B. Barefoot for plaintiff, appellee.*
*Weeks & Muse for defendant, appellant.*

WINBORNE, C. J. The pivotal question on this appeal revolves around assignment of error No. 8 based upon exception No. 20 taken to the action of the trial court in sustaining motion of plaintiff for nonsuit of defendant's cross-action or counterclaim on the ground that it is based on an alleged breach of an oral contract which was substituted by the written lease agreement which, as expressed by counsel for plaintiff, brings in the principle of novation.

In this connection "Novation may be defined as a substitution of a new contract or obligation for an old one which is thereby extinguished * * * The essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract * * * ." 66 C. J. S. Novation Secs. 1 and 3.

"Novation implies the extinguishment of one obligation by the substitution of another." *Walters v. Rogers,* 198 N. C. 210, 151 S. E. 188. *Turner v. Turner,* 242 N. C. 533, 83 S. E. 2d 245; *Bank v. Supply Co.,* 226 N. C. 416, 38 S. E. 2d 503.

"Ordinarily," as stated in *Growers Exchange v. Hartman,* 220 N. C. 30, 16 S. E. 2d 398, in opinion by *Devin, J,* later C. J., "in order to constitute a novation the transaction must have been so intended by the parties."

Indeed this headnote in *Bank v. Supply Co., supra,* that "Where the question of whether a second contract dealing with the same subject matter rescinds or abrogates a prior contract between the parties depends solely upon the legal effect of the latter instrument, the question is one of law for the courts" epitomizes the holding of this Court.

Now applying these principles to the factual situation in instant case, all the facts and circumstances are not uncontroverted. For instance, while plaintiff alleges in paragraph Twelve of his complaint that "defendant, on May 31, 1957, decided to lease equipment of plaintiff in lieu of giving plaintiff a written contract" this allegation is categorically denied in the answer of defendant. And while there may be other evidence bearing on the question of intent, it appears that a case for the jury is presented. Hence in the ruling made, apparently as a matter of law, the trial court erred in material aspect for which there must be a new trial.

Other assignments of error have been duly considered, and in them prejudicial error is not made to appear. Indeed the matters to which they refer may not recur on another trial. Hence for error pointed out, there will be a

New Trial.