WESTPORT 85 LIMITED PARTNERSHIP, PLAINTIFF v. GERALD E. CASTO AND WIFE, LINDA L. CASTO AND COTTMAN TRANSMISSION SYSTEMS, INC., DEFENDANTS

No. 9414SC178

(Filed 6 December 1994)

1. **Landlord and Tenant § 31 (NCI4th)— alleged breach—failure to deliver premises in timely manner—counterclaims properly denied**

   In an action to recover for breach of a lease agreement where defendant counterclaimed alleging that plaintiff failed and refused to deliver possession of the premises to defendant franchisor upon failure of defendant franchisees to pay the rent, the trial court properly denied the counterclaim and held defendant franchisor liable for damages where plaintiff acted reasonably and promptly to remove the franchisee's manager from the property after it learned that defendant franchisor had exercised its right to become lessee; and plaintiff did not breach the implied warranty of possession because that warranty required plaintiff to deliver actual possession of the property at the beginning date of the lease, not the subsequent date when the franchise agreement was terminated.

   **Am Jur 2d, Landlord and Tenant §§ 642 et seq.**

2. **Contracts § 107 (NCI4th)— licensing agreement terminated—novation—dismissal of crossclaim proper**

The trial court did not err in concluding that a license agreement between defendant franchisor and franchisees was terminated and in dismissing the franchisor's crossclaim against the franchisees for breach of the license agreement where a management agreement was executed with third persons for the purpose of relieving franchisees of further liability and responsibility on the franchise; the management agreement constituted a novation with respect to the license agreement; and defendant franchisor, though not a party to the management agreement, evidenced acquiescence to it by acknowledging receipt of the agreement, negotiating a check from the third persons for purchase of the franchise, and accepting a third party's performance under the management agreement.

**Am Jur 2d, Novation §§ 25 et seq., 44 et seq.**

**Creditor's acceptance of obligation of third person as constituting novation. 61 ALR2d 755.**

Appeal by defendant Cottman Transmission Systems, Inc. from judgment entered 7 September 1993 by Judge J. B. Allen, Jr. in Durham County Superior Court. Heard in the Court of Appeals 5 October 1994.

On or about 15 June 1989, Defendants Gerald E. Casto and Linda L. Casto (the Castos) entered into a License Agreement for the purchase of a Cottman franchise from defendant Cottman Transmission Systems, Inc. (Cottman). The Castos leased space in a building located at 1408 Christian Avenue, Durham, North Carolina (the property) from plaintiff Westport 85 Limited Partnership for the purpose of operating the Cottman franchise. The lease, which was executed on 30 July 1989, was for a term of five years commencing on the 1st day of November 1989 and expiring 30 October 1994. The rent was to be $2,200 per month for the first year and was to increase in subsequent years. The lease contained a Lease Rider signed by plaintiff, the Castos and Cottman, which provided that the Castos conditionally assigned all of their right, title and interest in the Lease Ageement to Cottman, effective upon the occurrence of two conditions: (1) termination or expiration of the License Agreement between Cottman and the Castos and (2) exercise by Cottman of its option to assume the

obligations of and replace lessee as the lessee under the lease within thirty days after termination or expiration of the License Agreement.

From 25 February 1991 to 15 April 1991, pursuant to a Management Agreement (the Management Agreement) entered into by the Castos, Leo J. Trapp (Trapp) and Veelam Anand (Anand) on a Cottman form provided by Cottman, Trapp managed the Cottman Transmission Center located on the property. The Management Agreement provided for the eventual sale of the Castos' Cottman franchise to Trapp and Anand. Pursuant to that purchase agreement, Trapp and Anand paid $7,500 of a $15,000 purchase price to Cottman at the time of the signing of the Management Agreement and $7,500 thereafter. On 12 March 1991, Cottman acknowledged receipt of the fully executed Management Agreement and the first payment of $7,500. Cottman later decided not to sell the franchise to Anand and Anand was removed as a party to the Management Agreement.

On 15 April 1991, after the Castos were in arrears on amounts due under the License Agreement, Cottman sent two representatives to Durham to execute a Termination of License Agreement between Cottman and the Castos (the Termination Agreement). Prior to executing the Termination Agreement, the Cottman representatives unsuccessfully attempted to take control of the property by entering the premises unannounced to Trapp. Trapp "flashed" a gun at one of the representatives, who then called the police. When the police officers arrived, Gerald Casto informed them that he was the lawful tenant and that Trapp was present on the property pursuant to the Management Agreement. Moreover, the police called the plaintiff and were told by plaintiff's representative that Trapp was the lawful tenant. The police then ordered the Cottman representatives to leave the property. After the Cottman representatives left the premises, defendant Cottman and defendants Castos executed the Termination Agreement.

Defendant Cottman elected to assume the lease and notified plaintiff to that effect via telefax on 16 April 1991. Plaintiff acknowledged Cottman as the lessee of the property and informed Cottman that the lease was in default for nonpayment of rent. Plaintiff requested Cottman to cure the default by 17 May 1991. On or about 17 April 1991, at Cottman's request, plaintiff hand delivered a letter to Trapp, informing Trapp that Cottman had elected to assume the lease and that Cottman was entitled to possession of the premises. Cottman subsequently negotiated a settlement agreement with Trapp

which provided that Trapp would leave the property and be allowed to remove the equipment and inventory. In the meantime, Cottman had been discussing with Richard Draina the possibility of his operating the franchise pursuant to a management agreement, but Draina eventually decided not to enter into a management agreement. On 10 May 1991, Cottman informed plaintiff that it was unable to find an operator to replace the Castos and advised plaintiff that it should find a new lessee for the property. Cottman did not cure the default and did not pay any more rent. Thereafter, plaintiff rented the property to a new lessee for $1,600 per month for a term commencing on 1 September 1991 and expiring 31 August 1994.

On 11 October 1991 plaintiff instituted this action against the Castos for $8,800 in back rent and against defendant Cottman for $38,628 damages for breach of the lease. Defendant Cottman filed an answer, crossclaim and counterclaim. In its counterclaim, Cottman alleged, among other things, that plaintiff breached the Lease Rider and Lease Agreement by failing and refusing to deliver possession of the premises to defendant Cottman on 15 April 1991 as a result of which Cottman was unable to resell the Cottman Transmission Center franchise to a prospective purchaser and the Center was closed. Cottman sought damages in excess of $10,000 for losses associated with the closing of the Center. Defendant's crossclaim against the Castos alleged and sought damages for breaches of the License Agreement.

The case was tried without a jury before the Honorable J. B. Allen, Jr. in the 16 August 1993 Civil Session of Durham County Superior Court. By judgment entered 7 September 1993, the trial court concluded that defendant Cottman became lessee under the 30 July 1989 Lease Agreement when Cottman gave written notice to plaintiff that it had exercised its option to become lessee under the Lease Rider on 16 April 1991. The trial court further concluded that Cottman breached the Lease Agreement by failing to pay any rent due under the lease and by abandoning the lease pursuant to the notice given to plaintiff on 10 May 1991. The court ordered defendant Cottman to pay plaintiff damages of $32,553 with interest from 10 May 1991. The court denied Cottman's counterclaim and dismissed the crossclaim with prejudice. From this judgment, defendant Cottman appeals.

*Hutson Hughes & Powell, P.A., by James H. Hughes and Lauren M. Mikulka, for plaintiff-appellee.*

*Carruthers & Roth, P.A., by Kenneth L. Jones, for defendant-appellant Cottman Transmission Systems, Inc.*

*Randall, Jervis & Hill, by James T. Hill, for defendants-appellants Gerald E. Casto and wife, Linda L. Casto.*

THOMPSON, Judge.

**[1]** Defendant Cottman argues that the trial court erred in denying its counterclaim, in dismissing its crossclaim and in holding it liable for damages. For the reasons discussed below, we affirm.

In denying defendant's counterclaim and awarding damages to plaintiff, the trial court concluded that plaintiff acted reasonably and promptly to remove Trapp from the property after it learned that Cottman had exercised its right to become lessee and that plaintiff did not breach the implied warranty of possession. Defendant argues that the trial court erred in concluding that plaintiff did not breach the implied warranty of possession because that warranty required plaintiff to deliver actual possession of the property to Cottman on 15 April 1991.

Cottman also argues that the trial court erred in holding it liable for rent because plaintiff's breach entitled it to treat the lease as repudiated on 16 April 1991. We hold that plaintiff was not required to deliver actual possession of the property to Cottman on 15 April 1991 and thus affirm the trial court's denial of the counterclaim and its award of damages to plaintiff.

In *Sloan v. Hart*, 150 N.C. 269, 272, 63 S.E. 1037, 1038 (1909), our Supreme Court adopted the English Rule "that in the absence of express provision in the lease, the lessor impliedly covenants with the lessee that the premises shall be open to entry by the lessee at the time fixed for the beginning of the term." The rationale for the rule is that

> [w]hen a lease is made, the beginning of which is fixed at some future date, it is within the contemplation of the parties and a part of their understanding, without which the lease would not have been made, that when the time comes for the lessee to take possession, according to the lease, the lessor shall have the premises open to the entry of the lessee, and that the latter is not liable for rent until he is afforded an opportunity to enter, and is under no

obligation to maintain an action against a tenant holding over to recover possession.

*Id.* at 273, 63 S.E. at 1039. However, the implied covenant does not extend beyond the time when the lease is to commence. *Id.* at 274, 63 S.E. at 1039. Thus, where a stranger trespasses on or takes possession of and holds the leased premises after the time when the lessee is entitled to have the possession, that is a wrong done to the lessee for which the lessor cannot be held responsible. *Id.*

Defendant Cottman satisfied the conditions of the Lease Rider on 16 April 1991 and thus was assigned all of the Castos' right, title and interest in the 30 July 1989 Lease Agreement on that date. " 'An "assignment" is a conveyance of the lessee's entire interest in the demised premises, without retaining any reversionary interest in the term in itself.' " *Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 162, 356 S.E.2d 912, 915 (1987) (citation omitted). The 30 July 1989 Lease Agreement was for a five-year term to commence on 1 November 1989. Thus, under the rule set out in *Sloan*, plaintiff lessor impliedly covenanted to deliver actual possession of the premises on 1 November 1989 and not on some subsequent date when the Castos' franchise agreement was terminated.

Defendant Cottman also argues that the trial court's finding that the plaintiff acted reasonably and promptly to remove Trapp was not supported by competent evidence. Assuming *arguendo* that plaintiff was obligated to make reasonable efforts to assist Cottman in removing Trapp, we find the trial court's findings were supported by competent evidence. On April 15, at the time the Cottman representatives sought possession of the property, plaintiff had not received notice of the termination of the Castos' franchise agreement or of Cottman's exercise of its option to assume the lease. After it did receive such notice, plaintiff acted reasonably and promptly to remove Trapp.

Defendant Cottman also contends that the trial court should have awarded it damages for its financial losses suffered as a result of the loss of the Draina management agreement because the court found as fact that one reason Draina decided not to go forward with the management agreement was that "the transfer of the Property from Trapp to Cottman had not been handled cleanly." We disagree. Defendant wrongly equates this finding with a conclusion that plaintiff's conduct was a contributing cause and a proximate cause of the loss of the Draina management agreement. The court did not find either that defendant's losses were caused by the loss of the Draina management

agreement or that plaintiff was responsible for the manner in which the property was transferred from Trapp to Cottman.

**[2]** We next address the trial court's dismissal of Cottman's crossclaim. The trial court dismissed the crossclaim because it concluded that the Management Agreement constituted a novation with respect to the license agreement and that the termination agreement constituted a release of any and all liability between Cottman and the Castos. Cottman argues that the court's conclusion that the Management Agreement constituted a novation is erroneous and that the court's conclusion that the Termination Agreement constituted a release was based on improperly admitted parol evidence. We do not address the latter argument because we find that the trial court correctly concluded that the Management Agreement constituted a novation with respect to the license agreement and that this conclusion was a sufficient ground for dismissing the crossclaim.

In reviewing the decision of a trial court sitting without a jury, we must determine " 'whether there was competent evidence to support its findings of fact and whether its conclusions of law were proper in light of such facts.' " *Chemical Realty Corp. v. Home Fed'l Savings & Loan,* 84 N.C. App. 27, 37, 351 S.E.2d 786, 792 (1987) (citation omitted).

The trial court made the following pertinent findings of fact which were supported by competent evidence: (1) Cottman was aware of the negotiations between the Castos and Trapp and Anand for the sale of Castos' Cottman franchise and Cottman furnished Trapp and Anand with a North Carolina Offering Circular to familiarize and inform them concerning the franchise of an automobile transmission repair center, (2) the purpose of the Management Agreement was for Trapp and Anand to acquire the franchise and relieve Castos of further liability and responsiblity on the franchise, (3) by letter dated 12 March 1991 Cottman acknowledged receipt of the fully executed Management Agreement with a check payable to Cottman in the amount of $7,500, (4) Cottman negotiated the $7,500 check by depositing it in Cottman's account and applying it towards the Castos' accounts receivable balance, which was in arrears, and (5) Trapp operated the Cottman center from 26 February 1991 through 15 April 1991 pursuant to the Management Agreement.

The court concluded that the signing of the 25 February 1991 Management Agreement between the Castos, Trapp and Anand, and the participation of Cottman in that transaction, including its subse-

quent acceptance of the $7,500 check, constituted a substitution of contract between Cottman, Trapp and Anand, and therefore terminated the License Agreement between Cottman and Castos. We hold that this conclusion was proper in light of the findings of fact referred to above. "A novation occurs when the parties to a contract substitute a new agreement for the old one." *Whittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 526, 379 S.E.2d 824, 827 (1989). " 'The essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract.' . . . 'Ordinarily in order to constitute a novation the transaction must have been so intended by the parties.' " *Tomberlin v. Long*, 250 N.C. 640, 644, 109 S.E.2d 365, 368 (1959) (citations omitted). Defendant Cottman contends that the Management Agreement could not have constituted a novation because it was not a party to the agreement. We disagree. Although Cottman did not sign the Management Agreement, it evinced agreement to the substitution of Trapp for the Castos by acknowledging receipt of the Management Agreement, negotiating the $7,500 check, and accepting Trapp's performance under the Management Agreement from 26 February 1991 through 15 April 1991. Moreover, Cottman's knowledge and acquiescence constituted a ratification of the agreement between Trapp and the Castos which is sufficient to effect a novation. *See Port City Electric Co. v. Housing, Inc.*, 23 N.C. App. 510, 512, 209 S.E.2d 297, 299, *cert. denied*, 286 N.C. 413, 209 S.E.2d 297 (1975) (an agreement to substitute a new contract for an existing valid contract can be consummated by ratification).

For the reasons stated herein, the judgment below is

Affirmed.

Judges JOHNSON and McCRODDEN concur.