**BANK OF AM., N.A. v. RICE**

[230 N.C. App. 450 (2013)]

BANK OF AMERICA, N.A., Plaintiff
v.
CHRISTOPHER HARVEY RICE, DAVID HALVORSEN, HALEY BECK HILL,
JENNIFER BURKHARDT-BLEVINS, MARK GROW, AND
UBS FINANCIAL SERVICES, INC., Defendants

No. COA13-180

Filed 19 November 2013

1.  **Arbitration and Mediation—novations to notes—original agreement superseded**

    In an action to compel arbitration, an agreement between plaintiff's affiliate and defendant (the BAI Series 7 Agreement) had no effect because subsequent novations to notes unambiguously stated that they superseded all previous commitments and understandings.

2.  **Arbitration and Mediation—novation to note—earlier agreements superseded—no agreement to arbitrate**

    There was no agreement to arbitrate where a 2010 novation to a 2004 note did not contain an agreement to arbitrate, the novation was between the same parties, and the novation superseded any agreement the parties may have made in the 2004 note or the original agreement (the BAI Series 7 Agreement).

3.  **Negotiable Instruments—novations—parties not the same—arbitration not compelled**

    Defendant could not compel arbitration under 2010 novations to 2005 and 2006 notes because the parties were not the same and there was no evidence that the missing party (BAI) agreed, acquiesced, ratified, or in any other way accepted the 2010 novations.

Appeal by defendant Christopher Harvey Rice from orders entered 16 April 2012 and 22 August 2012 by Judge F. Lane Williamson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 15 August 2013.

*Johnston, Allison & Hord, P.A., by Martin L. White and John C. Lindley III, for defendant-appellant Christopher Harvey Rice.*

*Williams Mullen, by Kelly Colquette Hanley, Michael C. Lord, Kevin W. Benedict, and Robert Ward Shaw, for plaintiff-appellee.*

STROUD, Judge.

**BANK OF AM., N.A. v. RICE**

[230 N.C. App. 450 (2013)]

Defendant appeals orders denying his motions to compel arbitration. For the following reasons, we affirm.

## I. Background

"No man, for any considerable period, can wear one face to himself, and another to the multitude, without finally getting bewildered as to which may be the true." Nathaniel Hawthorne, The Scarlet Letter 197 (Bantam Books 1986) (1850). Indeed, the wearing of multiple "faces" may bewilder not only men, but also corporations. The record before us contains multiple documents regarding plaintiff Bank of America, N.A. and/or some variation of plaintiff and/or one of plaintiff's corporate affiliates; these include, but may not be limited to, Bank of America Corporation; NB Holdings Corporation; BAC North America Holding Company; BANA Holding Corporation; Bank of America, National Association; Banc of America Investment Services, Inc. (which is often referred to in various documents as "BAI," although some documents also use "BAI" to refer to several of the entities affiliated with it); U.S. Trust, N.A.; Merrill Lynch & Co.; and Merrill Lynch, Pierce, Fenner and Smith, Incorporated. Indeed, an attorney for plaintiff explained in an affidavit:

> Bank of America Corporation owns 100% of its subsidiary NB Holdings Corporation, which in turn holds 100% of BAC North America Holding Company, which in turn holds 100% of BANA Holding Corporation, which in turn holds 100% of Bank of America, N.A. U.S. Trust is a line of business within a division of Bank of America, N.A. Bank of America Corporation also owns 100% of another subsidiary, Merrill Lynch & Co., which in turn holds 100% of Merrill Lynch, Pierce, Fenner & Smith, Incorporated. Thus Merrill Lynch Pierce Fenner & Smith, Inc. is a separate legal entity from Bank of America, N.A. and its U.S. Trust line of business.

The trial court found that defendant "Rice was initially employed by BOA's corporate affiliate Banc of America Investment Services, Inc. ("BAI"), and later became employed by BOA's U.S. Trust[;]" defendant does not challenge this finding on appeal. In its brief plaintiff summarized some of the facts regarding the corporate entities involved in stating that

> [f]ollowing BOA's acquisition of the U.S. Trust line of business in July 2007, Rice transferred his employment

> from BAI to the new and separate division of BOA. . . .
> Thereafter, the Rice Team provided wealth management
> services only to U.S. Trust clients. Any brokerage services
> performed by the Rice Team were nominal because U.S.
> Trust is not a retail securities broker.

Plaintiff further stated that

> [a]s a result of its 23 October 2009 merger into Merrill Lynch,
> Pierce, Fenner and Smith Incorporated ("MLPF&S"), BAI
> was no longer an affiliate of BOA . . ., and BAI terminated
> or withdrew its registration with FINRA . . . MLPF&S is a
> separate legal entity from BOA and its U.S. Trust line of
> business. . . . Rice was never an employee of MLPF&S.

While this Court both respects and values the variety of methods available for creating various business entities, when a business entity dons multiple corporate masks for various purposes, the results may be what no one intended. We will not seek to set forth the entire history of defendant's employment with plaintiff or some related entity and the reorganization of the various corporate structures but will summarize only those facts which are necessary for an understanding of the disposition of this case.

On 24 September 2004, plaintiff's corporate affiliate BAI hired defendant as an employee. On this same date defendant and Banc of America Investments Services, Inc. ("BAI"), entered into an agreement entitled "BAI SERIES 7 AGREEMENT[.]"[1] The BAI Series 7 Agreement contained provisions regarding the following general topics: "employment 'at-will[,]' " "customer lists and other proprietary and confidential information[,]" "non-solicitation covenants[,]" "right to an injunction[,]" "compliance with applicable laws, rules, policies and procedures[,]" "hold harmless[,]" "arbitration[,]" "assignment[,]" "non-waiver[,]" "invalid provisions[,]" "choice of law[,]" and "terms and modifications[.]" (Original in all caps.) The arbitration provision provided:

> 7.1 With the limited exception of statutory
> discrimination claims, all controversies or claims arising
> out of or relating to Employee's employment with BAI
> including, but not limited to, the voluntary or involuntary
> suspension or termination of employment, or claims for

---

1. There is some dispute about whether the BAI Series 7 Agreement should be characterized as an "employment agreement." Although it seems to look like an employment agreement, this characterization is not relevant for our purposes.

compensation, this Agreement, and/or the construction, performance or breach of this Agreement, shall be brought in arbitration before the National Association of Securities Dealers, Inc., (NASD), and any judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereover. In the event Employee brings a statutory discrimination claim arising out of or relating to employment with BAI, no other claims relating to those statutory claims may be arbitrated.

7.2 Paragraph 7.1 shall not be deemed a waiver of BAI's right to seek injunctive relief in a court of competent jurisdiction as provided for in paragraph 4.1 above.

Also, on 24 September 2004, defendant executed a promissory note payable to plaintiff Bank of America, National Association, *not* BAI ("2004 Note"). The 2004 Note provided for defendant to pay to plaintiff the sum of $500,000.00, to be paid in six separate annual payments between 2005 and 2010. The 2004 Note provided that "[a]ny controversy or claim arising out of or relating to this Note or breach thereof shall be settled by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc." For the following two years, defendant executed substantially similar promissory notes, with almost verbatim arbitration provisions, but these two notes are payable to BAI, *not* plaintiff Bank of America, National Association.[2] The promissory note from 2005 was for $219,928.50, payable from 2006 to 2011 ("2005 Note") and the promissory note from 2006 was for $219,928.50, payable from 2007 to 2012 ("2006 Note").

On 4 May 2010, plaintiff entered into three "PROMISSORY NOTE NOVATION AGREEMENT[s;]" ("2010 Novations").[3] The 2010 Novations all stated they were between plaintiff Bank of America, not BAI, and defendant and they were "replac[ing]" the prior 2004 Note, 2005 Note, and 2006 Note; the 2010 Novations did not contain arbitration provisions and provided that

[t]his Note contains the complete understanding between the undersigned and the Lender [, Bank of

---

2. We are unable to discern from the record why the 2004 Note differs from the 2005 Note and 2006 Note in this regard, but must read the Notes as written and construe them accordingly.

3. As discussed below, we conclude that the 2010 Novations are not valid legal novations, but we refer to them as novations as this is what they were entitled by the parties.

America, National Association,] relating to the matters contained herein and *supersedes all prior oral, written and contemporaneous oral negotiations, commitments and understandings between and among Lender and the undersigned.* The undersigned did not rely on any statements, promises or representations made by the Lender or any other party in entering into this Note. (emphasis added.)

On 2 March 2011, plaintiff filed a "COMPLAINT, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY" against defendants, including Mr. Christopher Harvey Rice, the only defendant in this appeal. (Original in all caps.) Plaintiff summarized its allegations of the case as follows,

> This Complaint arises from the Individual Defendants' breach of contract and misappropriation of the Plaintiff's confidential, proprietary and trade secret information which occurred at the time of their coordinated and abrupt resignation from Plaintiff's U.S. Trust business on January 28, 2011. BOA is informed and believes that the Individual Defendants continue to breach their contractual duties and continue to commit tortious acts by misappropriating the Plaintiff's confidential, proprietary and trade secret information (despite a demand for its return) and by soliciting certain clients and customers of Plaintiff's U.S. Trust business. BOA is informed and believes that the Individual Defendants are engaged in this misconduct for the benefit of UBS.

Plaintiff brought claims for breach of contract, conversion, computer trespass, misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with contractual relations with plaintiff's U.S. Trust business clients, unfair competition, and breach of the 2010 Novations of the promissory notes. On 23 April 2011, pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, plaintiff stipulated to dismissal of its first seven claims against defendants with prejudice; thus, the only remaining claim was for breach of the promissory notes identified in plaintiff's complaint as the 2010 Novations.[4]

---

4. We note that plaintiff has not made any claim based upon the 2005 Note or the 2006 Note but instead relies solely on the 2010 Novations.

On or about 31 May 2011, defendant filed a motion "to compel arbitration and stay litigation" contending that the "[o]riginal [p]romissory [n]otes [m]andate [a]rbitration" and "[p]laintiff is bound to [a]rbitrate even without [a]rbitration [a]greement[.]" On or about 1 July 2011, defendant amended his motion, adding to his initial motion that "[t]he [a]mended [p]romissory [n]otes do not replace the [o]riginal [p]romissory [n]otes" and "[p]laintiff is bound to [a]rbitrate regardless of language of [a]mended [p]romissory [n]otes[.]" On 16 April 2012, the trial court denied defendant's amended motion.

On 26 April 2012, defendant filed a motion requesting the trial court amend its findings in its 16 April 2012 order denying his amended motion. This same date, defendant also filed a second motion "to compel arbitration and stay litigation[,]" (original in all caps), wherein defendant asserted that "[t]he instant motion arises from a completely different arbitration provision than the one upon which the First Motion was based;" this motion heavily relied upon the BAI Series 7 Agreement as the basis for arbitration. On 22 August 2012, the trial court denied defendant's motion to amend the 16 April 2012 order and defendant's second motion to compel arbitration and stay litigation. Defendant appeals both the 16 April and 22 August 2012 orders.

II. Standard of Review

Whether a dispute is subject to arbitration is an issue for judicial determination. Our review of the trial court's determination is de novo. Pursuant to this standard of review,

the trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate.

A two-part analysis must be employed by the court when determining whether a dispute is subject to arbitration: (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement.

The law of contracts governs the issue of whether there exists an agreement to arbitrate. Accordingly, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes.

*Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc.*, 201 N.C. App. 720, 723-24, 688 S.E.2d 47, 50 (citations, quotation marks, and brackets omitted), *review denied*, 364 N.C. 239, 698 S.E.2d 397 (2010).

### III. BAI Series 7 Agreement

[1] Defendant first contends that he was entitled to arbitration under the BAI Series 7 Agreement which he contends is an employment agreement. While both parties argue vigorously about what exactly the BAI Series 7 Agreement is and exactly which entities it binds, it is unnecessary to engage in this analysis as the only remaining claim left after the dismissal of plaintiff's first seven claims is for breach of the 2010 Novations. For the reasons stated below, we conclude that the BAI Series 7 Agreement has no effect in determining the terms of the promissory notes. *See Stovall v. Stovall*, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010).

> With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract.
>
> It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

*Id.* (citation omitted).

While it is true that the BAI Series 7 Agreement included an extremely broad arbitration provision, parties to any agreement are free at any time to enter into additional agreements and to state the specific terms of those documents within the four corners of those particular documents. Indeed, the 2004 Note, 2005 Note, and 2006 Note each included arbitration provisions, and the 2010 Novations "replac[ing]" the 2004 Note, 2005 Note, and 2006 Note all provided that they are "the complete

understanding between the undersigned and the Lender relating to the matters contained herein and *supersedes all prior oral, written and contemporaneous oral negotiations, commitments and understandings between and among Lender and the undersigned.*" (Emphasis added.) The 2010 Novations are unambiguous in stating that they "supersede all prior . . . written . . . commitments and understandings between and among the Lender [,Bank of America, National Association,] and the undersigned [defendant;]" the prior written "commitments and understandings" would include any prior promissory notes or agreements between defendant and plaintiff to the extent that the 2010 Novations are valid.[5] *See id.* Accordingly, defendant's argument as to the BAI Series 7 Agreement is overruled.[6]

### IV. Promissory Notes

Defendant next contends that "the trial court committed reversible error when ruling the various [2010] 'novations' replaced and superseded promissory notes since there was no mutuality of parties between the 'novations' and the original promissory notes." (Original in all caps.) Defendant is partially correct.

### A. 2004 Note

Defendant makes no specific argument regarding the 2004 Note, presumably because the 2004 Note was between defendant and plaintiff, and the 2010 Novation "replac[ing]" the 2004 Note was also between defendant and plaintiff. Accordingly, the 2004 Note and the 2010 Novation both have the same parties, defendant and plaintiff. Defendant has not attacked the 2010 Novation on any other ground. As the 2010 Novation replacing the 2004 Note stated that it is the entirety of the parties' agreement regarding the 2004 Note obligation it is replacing and as it does not contain an agreement to arbitrate, there was no agreement to arbitrate the 2004 Note since the 2010 Novation superseded any agreement the parties may or may not have made in the 2004 Note and/or the BAI Series 7 Agreement. *See generally Harbour Point Homeowners' Ass'n, Inc.*, 201

---

5. Likewise, the 2010 Novations would have no effect on the rights by and between defendant and BAI, since BAI was the entity which entered into the BAI Series 7 Agreement with defendant, but BAI has not brought any claim against defendant and is not a party to this action.

6. Defendant contends that "Equitable Estoppel Bars BOA from Selectively Affirming Provisions in the Employment Agreement While Eschewing Others[.]" Even assuming *arguendo* that plaintiff could be equitably barred from denying the validity of the BAI Series 7 Agreement, the result in this case does not depend upon the BAI Series 7 Agreement, as explained below, so we will not address equitable estoppel.

N.C. App. at 724, 688 S.E.2d at 50 ("A two-part analysis must be employed by the court when determining whether a dispute is subject to arbitration: (1) whether the parties had a valid agreement to arbitrate . . . .") Thus, the 2010 Novation as to the 2004 Note is a valid novation which is enforceable and not subject to arbitration.

### B.   2005 Note and 2006 Note

**[3]**  Defendant contends that the 2005 Note and 2006 Note are between defendant and BAI, but the 2010 Novations "replac[ing] those documents were between defendant and plaintiff; thus, contends defendant, a valid novation could not have occurred because BAI was not a party to the 2010 Novations replacing the 2005 and 2006 Notes. This is correct.

> Novation may be defined as a substitution of a new contract or obligation for an old one which is thereby extinguished . . . *The essential requisites of a novation are* a previous valid obligation, *the agreement of all the parties to the new contract,* the extinguishment of the old contract, and the validity of the new contract[.]

*Oil Co. v. Oil Co.*, 34 N.C. App. 295, 300, 237 S.E.2d 921, 925 (1977) (citation and quotation marks omitted) (emphasis added) (quoting *Tomberlin v. Long*, 250 N.C. 640, 644, 109 S.E.2d 365, 367-68 (1959)).

Plaintiff first directs our attention to findings of fact which it contends are binding; however, these findings of fact are regarding the BAI Series 7 Agreement which we have already concluded is not applicable to the resolution of this case. Plaintiff also contends that "the parties' mutual performance under the New Notes confirms the novation." But the 2010 Novations would have to be confirmed by the performance of the original party to the 2005 and 2006 Notes, BAI. Any performance by defendant or plaintiff would not indicate that BAI, the original party to the 2005 Note and the 2006 Note which the 2010 Novation purportedly "replace[d,]" agreed to the 2010 Novations. Indeed, BAI is not even a party to this lawsuit. *See Oil Co.*, 34 N.C. App. at 300, 237 S.E.2d at 925. Similarly, plaintiff contends that "[i]t is not necessary for all parties to expressly agree to a novation in order for it to be effective" and cites to one case wherein a party was found to be bound by a novation although he did not expressly agree to it; however, in plaintiff's cited case, the party took some action to acquiesce to the novation. *See Westport 85 Limited Partnership v. Casto*, 117 N.C. App. 198, 204-05, 450 S.E.2d 505, 510 (1994) (noting that the defendant who was a party to a contract "ratif[ied]" a novation to which he was not a party "by acknowledging receipt of the . . . [novation], negotiating the $7,500 check, and

accepting. . . performance under the [novation]"). Here, plaintiff has not directed us to nor are we aware of any action taken by BAI which shows acquiescence to the "replace[ment]" of its 2005 Note and 2006 Note with the 2010 Novations to which it was not a party. We conclude that the 2010 Novations regarding the 2005 Note and 2006 Note are invalid and unenforceable because BAI was not a party to the 2010 Novations purporting to "replace" the 2005 Note and 2006 Note, as the record does not contain any evidence indicating that BAI agreed, acquiesced, ratified or in any other form accepted the 2010 Novations purportedly "replac[ing]" the 2005 Note and 2006 Note.[7] As such, the purported 2010 Novations between plaintiff and defendant had no effect upon the 2005 Note and 2006 Note. Both the 2005 Note and 2006 Note, which, we assume without deciding, are in full force and effect, contained arbitration provisions, but plaintiff has not brought any claim based upon the 2005 Note and 2006 Note. Furthermore, plaintiff is not even a party to the 2005 Note or 2006 Note. Accordingly, defendant cannot compel arbitration as to plaintiff's claims under the 2010 Novations of the 2005 and 2006 Notes, because a valid novation could not occur without BAI, *see Oil Co.*, 34 N.C. App. at 300, 237 S.E.2d at 925, and plaintiff was not a party to the 2005 Note and 2006 Note.

## V. Conclusion

In conclusion, we affirm the trial court's order denying arbitration as to the 2010 Novation regarding the 2004 Note, because the 2010 Novation includes the entire agreement of the parties as to the 2004 Note and that novation does not contain an arbitration provision. We further affirm the trial court's denial of arbitration as to plaintiff's claims based upon the 2010 Novations regarding the 2005 Note and 2006 Note, but for a different reason than the trial court; here we affirm because there is no claim as currently pled to be arbitrated. Because of the narrow issue presented in this appeal, we express no opinion on the enforceability of the 2005 Note, the 2006 Note, or the 2010 Novations.

AFFIRMED.

Judges CALABRIA and DAVIS concur.

---

7. Nor is there any indication that the 2005 and 2006 Notes were ever transferred by BAI to plaintiff.