759 Ventures, LLC v. GCP Apartment Inv'rs, LLC, 2018 NCBC 81.

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17-CVS-4138

759 VENTURES, LLC; GUARDIAN
GC, LLC, a North Carolina limited-
liability company, individually and
derivatively on behalf of 759
Ventures, LLC,

        Plaintiffs,

v.

GCP APARTMENT INVESTORS,
LLC, a Florida limited-liability
company,

        Defendant.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

1. This case arises out of a management dispute between the members of 759 Ventures, LLC. Plaintiff Guardian GC, LLC ("Guardian") contends that Defendant GCP Apartment Investors, LLC ("GCP") materially breached the Operating Agreement of 759 Ventures by authorizing a distribution without Guardian's approval. The alleged breach, Guardian contends, gives it the right under the Operating Agreement to remove GCP as a manager of 759 Ventures. GCP denies any breach and has filed counterclaims, including a counterclaim seeking judicial dissolution of 759 Ventures.

2. Although discovery is ongoing, Guardian now moves for offensive summary judgment on its claim for breach of the Operating Agreement. For the reasons discussed below, the Court **DENIES** the motion.

*Shumaker, Loop & Kendrick, LLP, by Daniel R. Hansen, William H. Sturges, Megan M. Stacy, and Steven M. Berman, for Plaintiffs 759 Ventures, LLC and Guardian GC, LLC.*

*James McElroy & Diehl, P.A., by John R. Buric and John R. Brickley, for Defendant GCP Apartment Investors, LLC.*

Conrad, Judge.

I.
BACKGROUND

3. The Court does not make findings of fact in ruling on motions for summary judgment. The following background, drawn from the record evidence, is intended to provide context for the Court's analysis and ruling.

4. 759 Ventures invests in real estate. It does not directly own property but instead holds interests in, and is the sole manager of, four other entities that, in turn, own real estate. (V. Am. Compl. ¶ 15, ECF No. 34 ["Compl."].)

5. Guardian and GCP are 759 Ventures' only members and managers. (Compl. ¶¶ 3–4, 19–20.) Guardian owns a two-thirds membership interest, and GCP owns the other third. (Compl. ¶ 3.) Despite the unequal membership interests, Guardian and GCP agreed to serve as co-managers with "equal rights and authority to participate in the management of" 759 Ventures. (Operating Agreement of 759 Ventures § 6.1, ECF No. 35 ["Op. Agr."]; *see also* Compl. ¶ 20.)

6. Guardian alleges that the management of 759 Ventures has been anything but equal. According to Guardian, GCP has unilaterally managed 759 Ventures, operated its subsidiary entities, and negotiated with their tenants, in addition to refusing to allow Guardian to inspect relevant books and records. (*See* Compl. ¶ 115.) Guardian contends that each of these acts is a material breach of 759 Ventures'

Operating Agreement, and the complaint asserts direct and derivative claims for the alleged breaches. (*See* Compl. ¶¶ 110–24, 126–36.)

7. Guardian's motion seeks judgment on only one of the alleged breaches. Specifically, Guardian contends that GCP improperly authorized a distribution without Guardian's consent. (Compl. ¶ 115; Pl.'s Mot. Summary J. ¶ 2, ECF No. 87.)

8. The dispute concerns Vyne Residential, LLC ("Vyne"), one of the entities controlled by 759 Ventures. (Compl. ¶ 24.) In January 2016, Vyne sold a condominium complex, receiving more than $7 million in net cash proceeds. (Compl. ¶¶ 25–27, Ex. 5, ECF No. 38.) Vyne immediately distributed most of the cash to its members, including 759 Ventures, but temporarily withheld $1.75 million. (Compl. ¶¶ 28–35; Mazzone Aff. Ex. C, ECF No. 106.3.)

9. The decision to withhold the funds appears to have been made by GCP's manager, Max Mazzone, in his role as Vyne's manager. (Compl. ¶¶ 13, 34; Mazzone Aff. ¶¶ 2, 10, ECF No. 106.) On January 11, 2016, Mazzone e-mailed Guardian's principals, Filippo Mizzi and Christopher Needham, and stated the funds would be held back pending resolution of "open balances" owed by Guardian and purported "defaults" by Guardian under various agreements related to Vyne. (Compl. ¶ 34; Mazzone Aff. Ex. C.)

10. Five months later, Mazzone reversed course. In a June 1, 2016 letter to Mizzi and Needham, Mazzone stated that "an imminent resolution of these unresolved matters appear[ed] unrealistic." (Mazzone Aff. Ex. D, ECF No. 106.4.) Noting that he had received "directives" from Guardian's principals to distribute the

reserved funds, Mazzone declared that Vyne would make a "final distribution" and that 759 Ventures would make a "corresponding distribution" to its members. (Mazzone Aff. Ex. D.) The letter requested "explicit written distribution instructions" from Guardian. (Mazzone Aff. Ex. D.)

11. Guardian claims it objected to the distribution. On June 8, 2016, counsel purporting to represent Guardian requested an accounting of the Vyne distribution, including an explanation of any difference between the amount initially withheld and the amount actually distributed. (Mazzone Aff. Ex. F, ECF No. 106.6; Compl. ¶ 38.) The letter states that Guardian "does not consent or agree to any distribution to the members of 759 Ventures until the above information is provided and Guardian [] has the opportunity to review." (Mazzone Aff. Ex. F.)

12. GCP, on the other hand, points to evidence this letter was sent only on behalf of Filippo Mizzi and his brother, Enzo Mizzi. (*See* Carpenter Aff. ¶¶ 17–18, ECF No. 105; Mazzone Aff. ¶ 32.) According to GCP, the Mizzi brothers were engaged in a power struggle with Needham and two other individuals (Justin Fong and Marlon Brand) regarding "who actually managed [Guardian]"—a power struggle that lasted throughout 2016 and was not resolved until just before the filing of this lawsuit. (Def.'s Mem. Opp'n to Pl.'s Mot. Summary J. 2–3, ECF No. 104 ["Mem. Opp'n"]; Carpenter Aff. ¶¶ 7–14, 17; Mazzone Aff. ¶¶ 8, 10–30.) GCP asserts that, as a result of the power struggle, it did not and could not know who had authority to speak for Guardian during the relevant time period. (*See* Mem. Opp'n 3; Mazzone Aff. ¶¶ 8, 10–30.) Nonetheless, GCP alleges that it reached out to each of the three factions

regarding the distribution, that "none objected to the distribution of the Vyne proceeds generally," and that "each requested a distribution be made to them." (Mem. Opp'n 3; Mazzone Aff. ¶¶ 11, 13–15.)

13. At some point (the timing is unclear), 759 Ventures carried through on Mazzone's announcement by distributing cash to GCP but withholding Guardian's share. (*See* Compl. ¶ 45, Ex. 10 at Ex. A, ECF No 38.) GCP continued to assert that it had received no certainty about where to release Guardian's share. (*See* Compl. Ex. 10.) Counsel for Guardian reiterated the objections made in June 2016. (*See* Compl. ¶ 46, Ex. 11, ECF No. 39.)

14. Guardian now contends GCP breached section 7.3(b) of the Operating Agreement. In relevant part, section 7.3(b) states that, "in the event [759 Ventures] receives distributions of Distributable Cash from one or more [single purpose entities], upon the consent of those Managers holding a majority of the Percentage Interests acting in their reasonable discretion, [759 Ventures] shall distribute the Distributable Cash." (Op. Agr. § 7.3(b).) Guardian contends that it never gave consent, as majority member, to a distribution.

15. Guardian filed this suit on March 8, 2017 and then filed an amended complaint on March 30, 2017. After the filing of the amended complaint, the parties continued to haggle over the distribution, with Guardian requesting a "full accounting" and payment of its share from the Vyne sale. (Berman Aff. ¶ 5, Ex. 1, ECF Nos. 90, 90.1.) GCP responded with a check for $720,000. (Berman Aff. ¶ 6, Ex. 2, ECF No. 90.2.) Guardian initially objected, asserting again that it never received

the requested accounting. (Berman Aff. ¶ 7, Ex. 3, ECF No. 90.3.) Guardian eventually accepted a $720,000 wire transfer from GCP on October 25, 2017, under a full reservation of rights. (Berman Aff. ¶ 12, Ex. 6, ECF No. 90.6.)

16. Although discovery remains ongoing, Guardian moved for summary judgment on April 26, 2018. The motion is fully briefed, and the Court held a hearing on July 13, 2018. Guardian's motion is now ripe for resolution.

## II.
## ANALYSIS

17. According to Guardian, the undisputed facts show that GCP authorized a distribution without Guardian's consent, thereby breaching section 7.3(b) of the Operating Agreement. (*See* Pl.'s Br. Supp. Mot. Summary J. 1, ECF No. 88.) GCP responds, first, that Guardian lacks standing because its claim is derivative in nature and belongs to 759 Ventures. (Mem. Opp'n 1.) Assuming Guardian has standing, GCP also contends that the undisputed facts do not establish a material breach of section 7.3(b). (Mem. Opp'n 1–2.)

### A. Standing

18. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002). "The term refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 51 (2002).

19. The question here is whether Guardian has standing to pursue a direct claim, in its own right, for breach of the Operating Agreement. GCP contends that Guardian lacks standing because the claim belongs to 759 Ventures and therefore must be pursued, if at all, as a derivative claim. (*See* Mem. Opp'n 1.) The answer "turns on whether the alleged injuries were caused directly to" Guardian or instead "are a consequence of breaches of fiduciary duty that harmed" 759 Ventures. Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[5] (7th ed. 2017).

20. The gist of Guardian's claim is that GCP excluded it from the management of 759 Ventures. Section 6.1(a) of the Operating Agreement guarantees "equal rights and authority to participate in the management of" 759 Ventures, expressly stating that "management decisions shall require the approval, consent, agreement or ratification of a majority of the Managers." (Op. Agr. § 6.1(a).) Section 7.3(b) further states that distributions shall be made only "upon the consent of those Managers holding a majority of the Percentage Interests acting in their reasonable discretion." (Op. Agr. § 7.3(b).) Guardian alleges that GCP authorized a distribution without Guardian's consent, thereby depriving Guardian of its rights to participate equally in 759 Ventures' management, to approve management decisions, and to veto distributions to 759 Ventures' members. (*See* Compl. ¶ 115.)

21. These alleged injuries are Guardian's and Guardian's alone. The right to exert management authority and the right to vote on key management decisions are rights possessed by Guardian, either as a manager of 759 Ventures or as its majority

member.  The deprivation of those rights is a harm unique to Guardian, not one felt by 759 Ventures.

22.    Our courts have held that analogous claims are properly characterized as direct claims, not derivative claims.  Actions "to enforce a shareholder's voting rights," for example, belong to the shareholder, not to the corporation.  Robinson, *supra*, § 17.02[2].  For that reason, shareholders' claims asserting violations of the "right to vote their shares" are "properly pled as individual claims."  *Green v. Condra*, 2009 NCBC LEXIS 20, at *36 (N.C. Super. Ct. Aug. 14, 2009) (denying motion to dismiss); *see also Jackson v. Marshall*, 140 N.C. App. 504, 508, 537 S.E.2d 232, 235 (2000) (citations omitted) (citing "right to vote" as permissible basis for individual claim).

23.    There is no good reason to treat similar claims by members or managers of limited liability companies any differently.  In a recent decision applying Delaware law, this Court held that a claim for breach of an LLC's operating agreement, involving the deprivation of a member's "right to vote on critical company decisions," was properly characterized as a direct claim.  *La Mack v. Obeid*, 2015 NCBC LEXIS 24, at *12–14 (N.C. Super. Ct. Mar. 5, 2015).  The Court explained that "the denial of a shareholder's right to vote on important company matters is nearly always, under Delaware law, a direct harm that is unique to the individual" and that "[t]his principle applies with equal force when a manager of an LLC is denied the manager's contractual right to vote on matters impacting the LLC."  *Id.* at *13 (citing *In re Ebix, Inc.*, 2014 Del. Ch. LEXIS 132, at *48 (Del. Ch. July 24, 2014); *Bakerman v. Sidney Frank Importing Co.*, 2006 Del. Ch. LEXIS 180, at *69–70 (Del. Ch. Oct. 16, 2006)).

Because North Carolina law draws on the same underlying principles, the Court finds *La Mack* persuasive and indistinguishable here.

24. To be clear, the Court does not hold that all claims asserted by a member or manager of an LLC for breach of its operating agreement are inherently direct. They are not. To the extent the relevant term in an operating agreement gives rise to a duty owed to the company, a claim for breach of that duty is one belonging to the company, and not generally to its members or managers. *See White v. Hyde*, 2016 NCBC LEXIS 74, at *24–25 (N.C. Super. Ct. Oct. 4, 2016) (no direct claim for breach of operating agreement where harm to company and individual was the same); *see also Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at *15 (N.C. Sup. Ct. Jan. 27, 2017) (no direct claim where alleged injury affected all members equally).

25. In this circumstance, Guardian seeks to enforce its own rights under the Operating Agreement and to remedy its own injuries, not those of 759 Ventures. Accordingly, the Court concludes that Guardian has standing to pursue its claim for breach of the Operating Agreement as a direct claim in its own right.

## B. Breach of the Operating Agreement

26. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material

fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted).

27. Where, as here, "the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578, 329 S.E.2d 417, 418 (1985) (citing *Brooks v. Mt. Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 728, 269 S.E.2d 704, 705 (1980)). "[H]e must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 729 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) (same). For that reason, it is "rarely . . . proper to enter summary judgment in favor of the party with the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243, 316 S.E.2d 350, 352 (1984).

28. The Court concludes that Guardian has failed to carry this burden. Although GCP raises several arguments, the Court need not address them all. It suffices to observe that the parties' differing interpretations of the Operating Agreement preclude summary judgment.

29. Because the Operating Agreement is a contract, ordinary rules of contract interpretation apply. *See, e.g.*, *N.C. State Bar v. Merrell*, 243 N.C. App. 356, 370–71, 777 S.E.2d 103, 114 (2015) (citing *Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 455, 750 S.E.2d 205, 209 (2013)). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the

court." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (1986) (citation omitted). Where the language is "subject to more than one reasonable meaning," however, it is an issue for the jury. *Robertson v. Hartman*, 90 N.C. App. 250, 252–53, 368 S.E.2d 199, 200 (1988) (citation omitted).

30. In relevant part, section 7.3(b) of the Operating Agreement states that, "in the event [759 Ventures] receives distributions of Distributable Cash from one or more [single purpose entities], upon the consent of those Managers holding a majority of the Percentage Interests *acting in their reasonable discretion*, the Company shall distribute the Distributable Cash" in a specific order of priority. (Op. Agr. § 7.3(b) (emphasis added).) The parties interpret the phrase "acting in their reasonable discretion" very differently. GCP contends that this language means Guardian may not unreasonably withhold consent to a distribution. (*See* Mem. Opp'n 17.) Guardian responds that it must exercise reasonable discretion in consenting to a distribution but need not do so in withholding consent. (*See* Pl.'s Reply to Def.'s Resp. Opp'n to Mot. Summary J. 6–7, ECF No. 110.)

31. The Court concludes that GCP's interpretation is reasonable. The language of section 7.3(b) does not distinguish between giving and withholding consent. A jury could reasonably read its language to mean that Guardian's decision to veto a distribution is subject to the same reasonableness requirement as its decision to authorize a distribution.

32. This is significant because Guardian has not demonstrated that its refusal to authorize a distribution in 2016 was reasonable as a matter of law. To carry its

burden on a motion for offensive summary judgment, Guardian must show "that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet*, 74 N.C. App. at 721, 329 S.E.2d at 729. Guardian has not done so. If a jury agrees with GCP in interpreting section 7.3(b), the jury must apply a reasonableness standard to the facts it finds.

33. Furthermore, GCP has offered evidence that, if taken as true, could support a conclusion that Guardian failed to act reasonably. Among other things, GCP cites evidence that Guardian was embroiled in a membership dispute throughout 2016, during which it was unclear who, if anyone, could authoritatively speak on its behalf. (*See* Carpenter Aff. ¶¶ 7–14, 17; Mazzone Aff. ¶¶ 8, 10–30.) GCP also points to evidence that the proceeds from Vyne's sale of its real-estate holdings were available in early 2016 and that Guardian's turmoil unnecessarily delayed their distribution. (*See* Carpenter Aff. ¶¶ 8–13; Mazzone Aff. ¶¶ 25–26, Ex. D.) Finally, GCP contends that it was unreasonable for Guardian to condition its consent on a request for an accounting because GCP had provided the accounting multiple times. (*See* Mem. Opp'n 17; Mazzone Aff. Ex. C; Berman Aff. Ex. 4, ECF No. 90.4.) Determining whether the evidence supports these contentions and, if so, whether Guardian's refusal to give consent to a distribution was unreasonable are tasks for the jury.

34. Viewing the evidence in a light most favorable to GCP, there are genuine issues of material fact. The Court is therefore constrained to deny the motion for summary judgment.

### III.
### CONCLUSION

35.  For these reasons, the Court **DENIES** Guardian's motion for summary judgment.


This the 13th day of August, 2018.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases