IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-251

Filed:  15 December 2015

Mecklenburg County, No. 11-CVS-4263

BANK OF AMERICA, N.A., Plaintiff,

v.

CHRISTOPHER HARVEY RICE, DAVID HALVORSEN, HALEY BECK HILL, JENNIFER BURKHARDT-BLEVINS, MARK GROW, AND UBS FINANCIAL SERVICES, INC., Defendants.

Appeal by defendant Christopher Harvey Rice from order entered 20 November 2014 by Judge Richard D. Boner in Mecklenburg County Superior Court and appeal by plaintiff from order entered 20 November 2014 by Judge W. Robert Bell in Mecklenburg County Superior Court.  Heard in the Court of Appeals 24 August 2015.

*Williams Mullen, by Michael C. Lord and Kelly Colquette Hanley, for plaintiff.*

*Johnston, Allison & Hord, P.A., by Martin L. White and Munashe Magarira, for defendant Christopher Harvey Rice.*

DAVIS, Judge.

This case involves a dispute regarding the entitlement of Plaintiff Bank of America, N.A. ("BOA") to enforce novations to three promissory notes executed by

Defendant Christopher Harvey Rice ("Rice").[1]  BOA appeals from an order entered by Judge W. Robert Bell granting summary judgment in favor of Rice regarding BOA's attempt to enforce two of the novations.  Rice appeals from an order entered by Judge Richard D. Boner granting both BOA's motion for judgment on the pleadings on its claim arising from the third novation and BOA's motion to dismiss Rice's counterclaims.  After careful review, we (1) affirm the order of Judge Boner; (2) reverse the order of Judge Bell; and (3) remand for additional proceedings.

## Factual Background

This matter is before us for the second time.  The underlying facts giving rise to this action are set out more fully in *Bank of Am., N.A. v. Rice*, __ N.C. App. __, 750 S.E.2d 205 (2013) ("*BOA I*"), and are quoted in pertinent part as follows:

> On 24 September 2004, [BOA's] corporate affiliate BAI [Banc of America Investment Services, Inc.] hired [Rice] as an employee.  On this same date [Rice] and [BAI], entered into an agreement entitled "BAI SERIES 7 AGREEMENT[.]"  The BAI Series 7 Agreement contained provisions regarding the following general topics: "employment 'at-will[,]'" "customer lists and other proprietary and confidential information[,]" "non-solicitation covenants[,]" "right to an injunction[,]" "compliance with applicable laws, rules, policies and procedures[,]" "hold harmless[,]" "arbitration[,]" "assignment[,]" "non-waiver[,]" "invalid provisions[,]" "choice of law[,]" and "terms and modifications[.]" (Original in all caps.)
>
> . . . .

---

[1] While the caption in one of the orders giving rise to this appeal lists additional parties besides Rice as defendants, none of these other defendants are parties to the present appeal.

[O]n 24 September 2004, [Rice] executed a promissory note payable to [BOA], not BAI ("2004 Note"). The 2004 Note provided for [Rice] to pay to [BOA] the sum of $500,000.00, to be paid in six separate annual payments between 2005 and 2010. . . . For the following two years, [Rice] executed substantially similar promissory notes . . . but these two notes are payable to BAI, not [BOA]. The promissory note from 2005 was for $219,928.50, payable from 2006 to 2011 ("2005 Note") and the promissory note from 2006 was for $219,928.50, payable from 2007 to 2012 ("2006 Note").

On 4 May 2010, [BOA] entered into three "PROMISSORY NOTE NOVATION AGREEMENT[S;]" ("2010 Novations"). The 2010 Novations all stated they were between [BOA], not BAI, and [Rice] and they were "replac[ing]" the prior 2004 Note, 2005 Note, and 2006 Note; the 2010 Novations . . . provided that

> [t]his Note contains the complete understanding between [Rice] and . . . [BOA] relating to the matters contained herein and supersedes all prior oral, written and contemporaneous oral negotiations, commitments and understandings between and among [BOA] and [Rice]. [Rice] did not rely on any statements, promises or representations made by [BOA] or any other party in entering into this Note.

. . . .

On 2 March 2011, [BOA] filed a "COMPLAINT, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY" against defendants, including . . . Rice, the only defendant in this appeal. (Original in all caps.) [BOA] summarized its allegations of the case as follows,

> This Complaint arises from [Rice's] breach of contract and misappropriation of [BOA's] confidential, proprietary and trade secret information which occurred at the time of [his] coordinated and abrupt resignation from [BOA's] U.S. Trust business on January 28, 2011. BOA is informed and believes that [Rice] continue[s] to breach [his] contractual duties and continue[s] to commit tortious acts by misappropriating [BOA's] confidential, proprietary and trade secret information (despite a demand for its return) and by soliciting certain clients and customers of [BOA's] U.S. Trust business. BOA is informed and believes that [Rice is] engaged in this misconduct for the benefit of UBS [UBS Financial Services, Inc.].

[BOA] brought claims for breach of contract, conversion, computer trespass, misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with contractual relations with [BOA's] U.S. Trust business clients, unfair competition, and breach of the 2010 Novations of the promissory notes. On 23 April 2011, pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, [BOA] stipulated to dismissal of its first seven claims against [Rice] with prejudice; thus, the only remaining claim was for breach of the promissory notes identified in [BOA's] complaint as the 2010 Novations.

On or about 31 May 2011, [Rice] filed a motion "to compel arbitration and stay litigation" contending that the "[o]riginal [p]romissory [n]otes [m]andate [a]rbitration" and "[BOA] is bound to [a]rbitrate even without [an] [a]rbitration [a]greement[.]" On or about 1 July 2011, [Rice] amended his motion, adding to his initial motion that "[t]he [a]mended [p]romissory [n]otes do not replace the [o]riginal [p]romissory [n]otes" and "[BOA] is bound to [a]rbitrate regardless of [the] language of [the] [a]mended [p]romissory [n]otes[.]" On 16 April 2012, the trial court

denied [Rice's] amended motion.

*Id.* at __, 750 S.E.2d at 207-09 (emphasis omitted).

In *BOA I*, the sole issue before this Court was whether Rice was entitled to compel arbitration of BOA's claims against him because of the existence of arbitration clauses in the 2004, 2005, and 2006 notes despite the fact that no such clauses were contained in the 2010 novations. Rice argued that the 2010 novations were invalid and did not supersede the 2004, 2005, and 2006 notes because there was no mutuality of parties as between the 2010 novations and the original notes. We determined that the trial court had not erred in denying Rice's motion to compel arbitration. *Id.* at __, 750 S.E.2d at 211.

With regard to the 2004 note and its 2010 novation, we held as follows:

> [Rice] makes no specific argument regarding the 2004 Note, presumably because the 2004 Note was between [Rice] and [BOA], and the 2010 Novation "replac[ing]" the 2004 Note was also between [Rice] and [BOA]. Accordingly, the 2004 Note and the 2010 Novation both have the same parties, [Rice] and [BOA]. [Rice] has not attacked the 2010 Novation on any other ground. As the 2010 Novation replacing the 2004 Note stated that it is the entirety of the parties' agreement regarding the 2004 Note obligation it is replacing and as it does not contain an agreement to arbitrate, there was no agreement to arbitrate the 2004 Note since the 2010 Novation superseded any agreement the parties may or may not have made in the 2004 Note and/or the BAI Series 7 Agreement. Thus, the 2010 Novation as to the 2004 Note is a valid novation which is enforceable and not subject to arbitration.

*Id.* at __, 750 S.E.2d at 210 (internal citation omitted).

We also affirmed the portion of the trial court's order rejecting Rice's attempt to compel arbitration as to BOA's claims arising under the novations to the 2005 and 2006 notes but on a different ground.

> [Rice] contends that the 2005 Note and 2006 Note are between [Rice] and BAI, but the 2010 Novations "replac[ing]" those documents were between [Rice] and [BOA]; thus, contends [Rice], a valid novation could not have occurred because BAI was not a party to the 2010 Novations replacing the 2005 and 2006 Notes. This is correct.
>
> . . . .
>
> [BOA] . . . contends that "the parties' mutual performance under the New Notes confirms the novation." But the 2010 Novations would have to be confirmed by the performance of the original party to the 2005 and 2006 Notes, BAI. Any performance by [Rice] or [BOA] would not indicate that BAI, the original party to the 2005 Note and the 2006 Note which the 2010 Novation purportedly "replace[d,]" agreed to the 2010 Novations. Indeed, BAI is not even a party to this lawsuit. . . . Here, [BOA] has not directed us to nor are we aware of any action taken by BAI which shows acquiescence to the "replace[ment]" of its 2005 Note and 2006 Note with the 2010 Novations to which it was not a party. We conclude that the 2010 Novations regarding the 2005 Note and 2006 Note are invalid and unenforceable because BAI was not a party to the 2010 Novations purporting to "replace" the 2005 Note and 2006 Note, as the record does not contain any evidence indicating that BAI agreed, acquiesced, ratified or in any other form accepted the 2010 Novations purportedly "replac[ing]" the 2005 Note and 2006 Note. As such, the purported 2010 Novations between [BOA] and [Rice] had no effect upon the 2005 Note and 2006 Note. Both the 2005 Note and 2006

Note, which, we assume without deciding, are in full force and effect, contained arbitration provisions, but [BOA] has not brought any claim based upon the 2005 Note and 2006 Note. Furthermore, [BOA] is not even a party to the 2005 Note or 2006 Note. Accordingly, [Rice] cannot compel arbitration as to [BOA's] claims under the 2010 Novations of the 2005 and 2006 Notes, because a valid novation could not occur without BAI and [BOA] was not a party to the 2005 Note and 2006 Note.

*Id.* at __, 750 S.E.2d at 210-11 (internal citations omitted).

We then summarized our holding as follows:

In conclusion, we affirm the trial court's order denying arbitration as to the 2010 Novation regarding the 2004 Note, because the 2010 Novation includes the entire agreement of the parties as to the 2004 Note and that novation does not contain an arbitration provision. We further affirm the trial court's denial of arbitration as to [BOA's] claims based upon the 2010 Novations regarding the 2005 Note and 2006 Note, but for a different reason than the trial court; here we affirm because there is no claim as currently pled to be arbitrated. Because of the narrow issue presented in this appeal, we express no opinion on the enforceability of the 2005 Note, the 2006 Note, or the 2010 Novations.

*Id.* at __, 750 S.E.2d at 211.[2]

Following our decision in *BOA I*, the case was remanded to the trial court for further proceedings. Rice filed an answer to BOA's complaint on 10 February 2014,

---

[2] Both of the orders that form the basis for the present appeal refer to (1) the 2010 novation of the 2004 note as "Note 1"; (2) the 2010 novation of the 2005 note as "Note 2"; and (3) the 2010 novation of the 2006 note as "Note 3." For the remainder of this opinion, we adopt these same shorthand references to the individual novations for the sake of consistency and ease of reading but on occasion refer to Notes 1, 2, and 3 collectively as "the 2010 Novations" for contextual clarity.

setting forth various affirmative defenses and asserting counterclaims for (1) breach of contract (in which Rice alleged he was entitled to compensation pursuant to certain incentive plans in effect between BOA and him); (2) quantum meruit; (3) unjust enrichment; (4) violation of North Carolina's Wage and Hour Act; and (5) unfair trade practices pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*

On 17 April 2014, BOA filed (1) a motion to dismiss Rice's counterclaims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure; and (2) a motion for judgment on the pleadings based on Rule 12(c) or, in the alternative, a motion for summary judgment pursuant to Rule 56 to enforce the 2010 Novations based on Rice's failure to make the payments to BOA required thereunder.

On 23 June 2014, a hearing on BOA's motions was held before the Honorable H. William Constangy in Mecklenburg County Superior Court. Following the hearing, Judge Constangy took the motions under advisement.

In the meantime, the parties continued to engage in discovery. During discovery, BOA produced documentation disclosing new information about events that had occurred between the signing of the original 2005 and 2006 notes and the execution of the 2010 Novations. These documents essentially showed the following: (1) In October 2009, BAI merged into Merrill Lynch, Pierce, Fenner and Smith, Inc. ("MLPF&S"), a subsidiary of Merrill Lynch; (2) MLPF&S therefore became the legal holder of the 2005 and 2006 notes originally entered into by Rice and BAI; and (3)

BOA subsequently acquired Merrill Lynch and, as part of the acquisition, BOA acquired approximately 205 promissory notes held by MLPF&S, including the 2005 and 2006 notes.

On 12 September 2014, BOA filed a motion for summary judgment in which it sought to enforce Notes 2 and 3. In support of its motion, BOA submitted (1) the affidavit of Allen Bednarz, BOA's Director of Global Wealth & Investment Management Compensation Administration; (2) copies of the 2004, 2005, and 2006 notes; (3) copies of the 2010 Novations; (4) various records pertaining to Rice's compensation; (5) the affidavit of John Romano, BAI's Chief Financial Officer from 2006 through October 2009; (6) the affidavit of Donald Brock, the Controller of U.S. Trust (a subsidiary of BOA); (7) excerpts from Rice's deposition; and (8) Rice's interrogatory responses. On that same date, Rice filed a cross-motion for summary judgment supported by his own affidavit. In his cross-motion, he contended that in light of our decision in *BOA I* the law of the case doctrine precluded the trial court from finding that Notes 2 and 3 were legally effective novations of the 2005 and 2006 notes.

On 7 October 2014, a hearing on BOA's motion for summary judgment and Rice's cross-motion was held before the Honorable W. Robert Bell. On 20 November 2014, Judge Bell issued an order ("Judge Bell's Order") granting Rice's cross-motion as to Notes 2 and 3 and denying BOA's motion. On that same date, the Honorable

Richard D. Boner entered an order ("Judge Boner's Order")[3] granting both BOA's motion to dismiss Rice's counterclaims pursuant to Rule 12(b)(6) and its motion for judgment on the pleadings as to Note 1 pursuant to Rule 12(c).[4]

On 10 December 2014, BOA filed a notice of appeal from Judge Bell's Order. On 29 December 2014, Rice gave notice of appeal as to Judge Boner's Order.

**Analysis**

**I. Judge Bell's Order**

BOA argues that Judge Bell erred in denying its motion for summary judgment and granting Rice's cross-motion on its claims for breach of contract as to Notes 2 and 3. We agree.

> On appeal, this Court reviews an order granting summary judgment *de novo*. The entry of summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A trial court may enter summary judgment in a contract dispute if the provision at issue is not ambiguous and there are no issues of material fact.

---

[3] Due to Judge Constangy's retirement subsequent to the 23 June 2014 hearing, the order was signed by Judge Boner pursuant to Rule 63 of the North Carolina Rules of Civil Procedure.

[4] Judge Boner's Order denied judgment on the pleadings as to BOA's breach of contract claims regarding Notes 2 and 3. Furthermore, although BOA's 17 April 2014 motions had included, in the alternative, a motion for summary judgment, all of the rulings contained in Judge Boner's Order were based on Rule 12.

*Malone v. Barnette*, __ N.C. App. __, __, 772 S.E.2d 256, 259 (2015) (internal citations and quotation marks omitted).

BOA contends that the trial court inappropriately utilized the law of the case doctrine in reaching its conclusion that BOA was not entitled to enforce Notes 2 and 3 as novations to the 2005 and 2006 notes. Rice, conversely, argues that the doctrine was correctly applied because *BOA I* definitively established that Notes 2 and 3 were not legally effective novations to the 2005 and 2006 notes.

The law of the case doctrine provides that

> when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal.

*Hayes v. City of Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 681-82 (1956).

"The general rule is that an inferior court must follow the mandate of an appellate court in a case without variation or departure. However, the general rule only applies to issues actually decided by the appellate court. The doctrine of law of the case does not apply to dicta, but only to points actually presented and necessary to the determination of the case." *Condellone v. Condellone*, 137 N.C. App. 547, 551, 528 S.E.2d 639, 642 (internal citations and quotation marks omitted), *disc. review denied*, 352 N.C. 672, 545 S.E.2d 420 (2000). Notably, for purposes of the present

appeal, "the law of the case doctrine does not apply when the evidence presented at a subsequent proceeding is different from that presented on a former appeal." *State v. Lewis*, 365 N.C. 488, 505, 724 S.E.2d 492, 503 (2012).

> The rule that a decision of an appellate court is ordinarily the law of the case, binding in subsequent proceedings, is basically a rule of procedure rather than of substantive law, and must be applied to the needs of justice with a flexible, discriminating exercise of judicial power. Therefore, in determining the correct application of the rule, the record on former appeal may be examined and looked into for the purpose of ascertaining what facts and questions were before the Court.

*Hayes*, 243 N.C. at 537, 91 S.E.2d at 682 (internal citations omitted).

In urging us to uphold the trial court's application of the law of the case doctrine, Rice attempts to rely on language in *BOA I* stating that Notes 2 and 3 were not valid novations because (1) BAI — rather than BOA — had executed the 2005 and 2006 notes; and (2) BAI did not sign or ratify Notes 2 and 3. However, Rice ignores our express recognition in *BOA I* of the fact that based on the record before us at that time there was no "indication that the 2005 and 2006 Notes were ever transferred by BAI to [BOA]." *BOA I*, __ N.C. App. at __ n. 7, 750 S.E.2d at 211 n. 7. That is no longer the case.

Our decision in *BOA I* was issued in the context of a bare factual record due to the fact that the appeal in *BOA I* was taken before the parties had begun discovery. Following our decision, based on new facts obtained during discovery conducted

between the parties, BOA submitted unrebutted affidavit testimony in support of its motion for summary judgment establishing that because of BOA's acquisition of the 2005 and 2006 notes, BAI was no longer the holder of these notes at the time the 2010 Novations were executed and, for this reason, was not required to ratify them. Thus, the present record on appeal contains facts that had not yet been discovered at the time of *BOA I*, and — as a result — the observations we made in *BOA I* forming the basis for Rice's present argument no longer conform to the factual record before us. *See State v. Paul*, __ N.C. App. __, __, 752 S.E.2d 252, 254 (2013) ("The law of the case principle does not apply when the evidence presented at a subsequent proceeding is different from that presented on a former appeal." (citation and quotation marks omitted)).

It is also worthy of emphasis that our decision in *BOA I* explicitly recognized that the only issue actually before this Court was whether Rice was entitled to compel arbitration of BOA's claims against him. *See BOA I*, __ N.C. App. at __, 750 S.E.2d at 211 (affirming trial court's denial of motion to compel arbitration and "express[ing] no opinion" on various additional issues "[b]ecause of the narrow issue presented in this appeal"). None of the issues in the present appeal require us to reexamine our prior ruling on the discrete issue decided in *BOA I* relating to whether BOA's claims must be arbitrated. For all of these reasons, the law of the case doctrine does not control our decision in the present appeal as to whether BOA was entitled to

summary judgment on its claims to enforce Notes 2 and 3 as novations to the 2005 and 2006 notes.

Nor has Rice identified any legal impediment to the acquisition of the 2005 and 2006 notes by BOA. "The general rule is that contracts may be assigned. The principle is firmly established in this jurisdiction that, unless expressly prohibited by statute or in contravention of some principle of public policy, all ordinary business contracts are assignable, and that a contract for money to become due in the future may be assigned." *Hurst v. West*, 49 N.C. App. 598, 604, 272 S.E.2d 378, 382 (1980) (citation and quotation marks omitted). Furthermore, an "assignment operates as a binding transfer of the title to the debt as between the assignor and the assignee regardless of whether notice of the transfer is given to the debtor." *Lipe v. Guilford Nat. Bank*, 236 N.C. 328, 331, 72 S.E.2d 759, 761 (1952); *see Credigy Receivables, Inc. v. Whittington*, 202 N.C. App. 646, 652, 689 S.E.2d 889, 893 ("It has long been the law in North Carolina that the assignee stands absolutely in the place of his assignor, and it is as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties." (citation, quotation marks, and ellipses omitted)), *disc. review denied*, 364 N.C. 324, 700 S.E.2d 748 (2010).

Based on the factual record currently before us, it is clear that BOA, not BAI, was the holder of the 2005 and 2006 notes at the time of the 2010 Novations. As such, BAI was no longer an interested party with regard to the notes at that time and was

not legally entitled to receive notice of the 2010 Novations or required to ratify them in order for them to constitute valid novations.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002) (citation and quotation marks omitted), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003). In support of its motion for summary judgment, BOA not only submitted competent evidence explaining its acquisition of the 2005 and 2006 notes prior to the execution of the 2010 Novations but also provided the following: (1) the 2005 and 2006 notes (signed by Rice); (2) Notes 2 and 3 (signed by Rice); (3) the deposition testimony of Rice in which he admitted that he had not paid the outstanding balances owed on Notes 2 and 3; and (4) the affidavit of Brock, who testified as to the precise amounts still owed on Notes 2 and 3 as of 2 October 2014. Rice has failed to make any valid argument refuting BOA's evidence that Notes 2 and 3 are legally enforceable novations to the 2005 and 2006 notes. Therefore, having established both that it was the real party in interest entitled to enforce Notes 2 and 3 and that Rice breached the terms thereof, BOA demonstrated that no genuine issue of material fact existed and that it was entitled to summary judgment on its claims as to Notes 2 and 3.

Accordingly, we reverse the order of Judge Bell denying BOA's motion for summary judgment as to its claims based on Notes 2 and 3 and granting Rice's cross-

motion. We remand to the trial court for the entry of summary judgment in favor of BOA as to these claims.

## II. Judge Boner's Order

We next address Rice's appeal of Judge Boner's Order granting both BOA's Rule 12(c) motion for judgment on the pleadings as to BOA's breach of contract claim regarding Note 1 and BOA's Rule 12(b)(6) motion to dismiss Rice's counterclaims. Rice's sole argument on this issue is procedural in nature, claiming that the trial court committed reversible error by considering documents extraneous to the pleadings in ruling on BOA's Rule 12 motions without converting them into motions for summary judgment. We disagree.

It is well settled that "[b]oth a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted should be granted when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief." *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988).

> Rule 12(b) provides that a motion to dismiss for failure to state a claim under Rule 12(b)(6) shall be treated as one for summary judgment and disposed of as provided in Rule 56 where matters outside the pleading are presented to and not excluded by the court in ruling on the motion. Rule 12(c) contains an identical provision, stating that if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

*Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 30, 732 S.E.2d 614, 617 (2012) (internal citations, quotation marks, and brackets omitted).

"If, however, documents are attached to and incorporated within a complaint, they become part of the complaint. They may, therefore, be considered in connection with a Rule 12(b)(6) or 12(c) motion without converting it into a motion for summary judgment." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). This is due to the fact that

> [t]he obvious purpose of . . . Rule 12(b) is to preclude any unfairness resulting from surprise when an adversary introduces extraneous material on a Rule 12(b)(6) motion, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings.

*Coley v. N.C. Nat. Bank,* 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979).

In *Coley*, the plaintiffs asserted that the trial court erred by considering materials outside the pleadings in ruling on the defendants' Rule 12(b)(6) motion to dismiss the plaintiffs' claim for fraudulent inducement without giving the plaintiffs a reasonable time in which to present additional materials in opposing the motion. *Id.* The plaintiffs argued that because the court considered materials outside of the pleadings — namely, the contract at the heart of the plaintiffs' fraudulent inducement claim — the motion should have been converted into a motion for summary judgment under Rule 56. *Id.* In rejecting the plaintiffs' argument, we noted that the plaintiffs

had specifically referred to the contract at issue in their complaint and that, for this reason, the trial court was not required to convert the matter into a summary judgment motion.

> Certainly the plaintiffs cannot complain of surprise when the trial court desires to familiarize itself with the instrument upon which the plaintiffs are suing because the plaintiffs have failed to reproduce or incorporate by reference the particular instrument in its entirety in the complaint. Furthermore, by considering the contract, the trial judge did not expand the hearing to include any new or different matters.

*Id.*

We elaborated on this principle in *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 554 S.E.2d 840 (2001).

> [T]his Court has stated that a trial court's consideration of a contract which is the subject matter of an action does not expand the scope of a Rule 12(b)(6) hearing and does not create justifiable surprise in the nonmoving party. This Court has further held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.

*Id.* at 60, 554 S.E.2d at 847 (internal citations omitted).

Here, it is clear from the face of Judge Boner's Order that the trial court did not convert BOA's Rule 12 motions into motions for summary judgment. Moreover, the order expressly states that in ruling on BOA's motions the trial court considered the pleadings, the General Plan Provisions of the two

> incentive compensation plans specifically referred to in the counterclaims of [Rice] and which are the subject of his claims, the authorities cited by the parties, the "Judge's Notebook" submitted by [BOA], including the Memorandum of Law in support of [BOA's] Motion to Dismiss/Motion for Judgment on the Pleadings, and Exhibit A (redacted excerpts from the 2010 Plan), Exhibit B (excerpts from defendant's 2010 Score Card) and copies of fourteen cases, as well as the argument of counsel.

Rice contends that it was improper for the trial court to consider the excerpts attached to BOA's Rule 12 motions from the two compensation plans pursuant to which Rice sought payment in his counterclaims — the "U.S. Trust, Bank of America Private Wealth Management 2010 U.S. Trust Private Client Advisor/Private Client Manager Incentive Plan" ("the 2010 PCA Incentive Plan") and the U.S. Trust "2011 Compensation Plan Overview" (collectively "the Incentive Plans").

Rice claims the trial court similarly erred in considering Exhibits A and B to the "Judge's Notebook" submitted by BOA. The Judge's Notebook consisted of a memorandum of law and copies of various cases along with two attached exhibits. Exhibit A was an additional excerpt from the 2010 PCA Incentive Plan. Exhibit B was an excerpt from Rice's "2010 Scorecard," which indicated that Rice had been employed by BOA as a Private Client Advisor II in 2010 and had received a negative performance review.[5]

---

[5] The Judge's Notebook was apparently served on Rice five days prior to the 23 June 2014 hearing.

Rice does not contest the authenticity of either the excerpts from the Incentive Plans or the 2010 Scorecard. Instead, his only argument, as noted above, is that these documents were extraneous to the pleadings and, accordingly, should not have been considered in connection with BOA's Rule 12 motions. We address these documents in turn.

**A. The Incentive Plans**

The fatal flaw with Rice's argument regarding the Incentive Plans is that — as Judge Boner's Order noted — Rice specifically referenced both plans in his counterclaims, alleging the following:

> 7. Pursuant to Plaintiff's Compensation Incentive Plans for its PCA's in 2010 and 2011, Mr. Rice was entitled to compensation in addition to his regular salary.
>
> 8. Mr. Rice was entitled to receive compensation pursuant to Plaintiff's Compensation Incentive Plan of at least $45,657.03 for services and work rendered during the fourth quarter of 2010. Said compensation should have been paid to Mr. Rice on or about February 28, 2011.
>
> 9. Mr. Rice was entitled to receive compensation pursuant to Plaintiff's Compensation Incentive Plan of at least $11,956.48 for services and work rendered during the first quarter of 2011. Said compensation should have been paid to Mr. Rice on or about May 31, 2011.

We rejected an analogous argument in *Robertson*. In that case, the plaintiffs purchased a home from the defendants. In conjunction with the sale, the defendants provided the plaintiffs with a termite inspection report stating that the residence was

free of any termite damage.  After closing, however, the plaintiffs discovered that the house had, in fact, suffered termite damage.  The plaintiffs therefore brought suit against the defendants for fraudulent misrepresentation and concealment and referenced the termite report in their complaint.  *Robertson*, 88 N.C. App. at 439, 363 S.E.2d at 674.

The defendants filed a motion to dismiss as well as a motion for judgment on the pleadings.  The trial court granted the defendants' motion to dismiss, and on appeal the plaintiffs argued that the trial court had impermissibly considered the termite report without converting the defendants' motion into a motion for summary judgment.  *Id.* at 440-41, 363 S.E.2d at 674-75.  In holding that the trial court did not err, we stated the following:

> Defendants in this case apparently utilized Rule 12(c) because they wanted the trial court to consider the termite report and the contract of sale in determining the sufficiency of plaintiffs' complaint.  These documents were not submitted by plaintiff, but copies of both documents were attached to the answer and motion to dismiss of defendants Boyd and copies of the termite report were attached to the motions to dismiss of defendants Booth Realty and Go-Forth.  Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court in ruling on a motion under Rule 12(b)(6).

*Id.* at 440-41, 363 S.E.2d at 675.

Here, similarly, the Incentive Plans considered by the trial court were expressly referenced in Rice's own counterclaims. Consequently, the trial court's review of excerpts from these documents did not require the conversion of BOA's Rule 12 motions into motions for summary judgment.

## B. Rice's 2010 Scorecard

Unlike the Incentive Plans, Rice's 2010 Scorecard was not referenced in the parties' pleadings. Therefore, the excerpt from the 2010 Scorecard should not have been considered by the trial court in ruling on BOA's Rule 12 motions.

However, we are satisfied that the trial court's consideration of this document was merely harmless error. Rice has failed to demonstrate in his appellate brief how the 2010 Scorecard related to the merits of his counterclaims (or, for that matter, to the merits of BOA's breach of contract claim as to Note 1), and, therefore, he has not shown that he was actually prejudiced by the trial court's error.

Both of the Incentive Plans expressly provided that

> participants [under the PCA Incentive Plans] whose employment is terminated (either by [BOA] or the participant) prior to the payment date of an incentive award are no longer eligible to be Plan participants and as such, are not eligible to receive a Plan award or other incentive payment, subject to the requirements of applicable law.

BOA's primary argument as to why Rice was not eligible to receive the compensation sought in his counterclaims was that his resignation from BOA

resulted in a forfeiture of his right to receive such compensation under the plain language of the plans.[6] In his brief to this Court, Rice has failed to articulate how the excerpt from the 2010 Scorecard related to the legal effect of his resignation on his eligibility to be compensated under the Incentive Plans.

Moreover, the trial court's entry of judgment on the pleadings in BOA's favor in connection with Note 1 was based solely on the undisputed fact that Rice was in default and had nothing to do with the contents of the 2010 Scorecard. Therefore, once again, Rice has failed to demonstrate any prejudice resulting from the court's consideration of that document. *See Cabaniss v. Deutsche Bank Secs., Inc.*, 170 N.C. App. 180, 184, 611 S.E.2d 878, 881 ("[P]laintiffs argue that the trial court wrongly considered documents outside the scope of the second amended complaint which were attached to the motion to dismiss. However, given plaintiffs' failure to comply with the demand requirements as discussed above, the court's consideration of the letter in making its ruling, while improper, was not prejudicial." (internal citation omitted)), *cert. denied*, 360 N.C. 61, 621 S.E.2d 176 (2005).

**III. Attorneys' Fees**

The final issue in this appeal concerns BOA's contention that it is entitled to an award of attorneys' fees in connection with its enforcement of Notes 2 and 3. "The general rule in this state is a successful litigant may not recover attorneys' fees,

---

[6] Rice has not challenged on appeal the validity of the trial court's substantive ruling on this issue.

whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 603, 632 S.E.2d 563, 575 (2006) (citation and quotation marks omitted), *appeal dismissed and disc. review denied*, 361 N.C. 350, 644 S.E.2d 5 (2007). N.C. Gen. Stat. § 6-21.2 provides, in pertinent part, as follows:

> Obligations to pay attorneys' fees upon any note . . . or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note . . . or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> . . . .
>
> > (2) If such note . . . or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note . . . or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2(2) (2013).

Notes 2 and 3 (like Note 1) each contain the following provision:

> **5. Payment.**
>
> . . . Where permitted by law, [Rice] shall reimburse [BOA] for any and all damages, losses, costs and expenses (including attorneys' fees and court or arbitrator costs) incurred or sustained by [BOA] as a result of the breach by [Rice] of any of the terms of this Note or in connection with the enforcement of the terms of this Note.

- 24 -

Judge Boner's Order granting BOA judgment on the pleadings as to Note 1 stated the following: "The award of [BOA's] costs, including its reasonable attorneys' fees, associated with the issues decided by this Order will be determined in a subsequent motion proceeding." In light of our determination that BOA was entitled to summary judgment in connection with Notes 2 and 3, we direct the trial court on remand to make a similar determination accompanied by appropriate findings as to BOA's entitlement to attorneys' fees in connection with its enforcement of Notes 2 and 3.

## Conclusion

For the reasons stated above, we (1) affirm Judge Boner's Order; (2) reverse Judge Bell's Order; and (3) remand for the entry of summary judgment in favor of BOA on its claims as to Notes 2 and 3 and for further proceedings in connection with BOA's motion for attorneys' fees.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Chief Judge McGEE and Judge ELMORE concur.