STROUD Judge.
 

 *274
 
 Respondent appeals from a judgment terminating her parental rights to her minor child. Because this Court's reversal of the trial court's 2015 order terminating respondent's parental rights based upon a petition filed in 2014 does not control the order on appeal, which was entered based upon a new petition for termination and based upon events during the six months next preceding the filing of the 2016 petition, the trial court's order does not violate the "law of the case" doctrine as argued by respondent. We therefore affirm.
 

 The background of this case can be found in the opinion issued at
 
 In re K.C.
 
 , --- N.C. App. ----,
 
 805 S.E.2d 299
 
 (2016) ("
 
 K.C. I
 
 ") wherein this Court concluded the district court erred when it terminated mother's parental rights to her son Karl
 
 [1]
 
 on the basis of neglect by abandonment. About six months after issuance of the opinion reversing the 2015 termination, on 16 November 2016, father filed a new petition to terminate respondent's parental rights.
 
 See generally
 
 id.
 

 Following a hearing, the trial court entered judgment on 5 July 2017 terminating respondent's
 
 *874
 
 parental rights after adjudicating the existence of abandonment under North Carolina General Statute § 7B-1111(a)(7). Respondent appeals.
 

 Respondent does not argue that the findings of facts regarding abandonment are not supported by the evidence, but instead argues that this Court's earlier reversal of the trial court's 2015 termination order based upon abandonment constitutes the law of the case such that the trial court could not again conclude that respondent abandoned Karl based at least in part upon her failure to visit with Karl. But "the law of the case doctrine does not apply when the evidence presented at a subsequent proceeding is different from that presented on a former appeal."
 
 Bank of America, N.A. v. Rice
 
 , --- N.C. App. ----, ----,
 
 780 S.E.2d 873
 
 , 880 (2015) (citation and quotation marks omitted).
 

 Petitioner filed a new petition for termination of parental rights six months after the filing of this Court's opinion reversing the 2015 order.
 
 See generally
 

 K.C. I
 
 , --- N.C. App. ----,
 
 805 S.E.2d 299
 
 . Since the hearing on the first petition was held in May of 2015,
 
 see
 

 id.
 

 at ----,
 
 805 S.E.2d at 300
 
 , a year and a half had elapsed after the first hearing until the filing of the second petition. The new petition alleges:
 

 As of the date of filing of this petition, the Respondent, the mother of the child, has willfully abandoned the child
 
 *275
 
 for at least six consecutive months immediately preceding the filing of this petition, by withholding her presence, her love, her care, and failing to take any opportunity to display maternal affection, as set forth in G.S. 7B-1111(a)(7), including, but not limited to, the following particulars[.]
 

 The "particulars" alleged in part that respondent "has not asked to see the child since April 10, 2014" nor has she sent letters, gifts, or any other communication since then. The petition also listed respondent's few visits to see the child since 2012, the most recent being 12 October 2013.
 

 Here, the trial court necessarily made some findings related to events that took place prior to the filing of the first petition to terminate parental rights in 2014; obviously, the child's date of birth and history leading up to the first petition's filing had not changed. But in the order on appeal, the district court made several unchallenged findings of fact about events occurring
 
 after
 
 the filing of the first petition. One finding is that respondent had not visited or spoken with Karl since 2013; although this time period-since 2013-includes 2014, it also includes all of the time after the filing of the 2014 petition up to the filing of the new petition in 2016. In addition, the trial court found that respondent has not sent Karl any cards or gifts, and respondent has not contacted family members to ask about Karl. The trial court ultimately found respondent "has willfully abandoned the minor child for a period of
 
 at least six consecutive months immediately preceding the filing of this petition,
 
 by withholding her presence, her love, her care and failing to take any opportunity to display maternal affection, as set forth in G.S. 7B-1111 (a)(7)." (Emphasis added.) Although respondent's failure to visit with or communicate with the child continued from 2013 until the filing of the second petition (and even thereafter), the prior opinion of this Court does not mean that respondent is immune from termination of her parental rights based upon abandonment for the rest of the child's minority even if she never seeks to see him or communicate with him again.
 

 In this Court's first opinion, we noted the trial court's findings regarding the reason for respondent's failure to visit:
 

 [Respondent] also requested in April 2014 to visit with Karl, but this request was denied based on the decision of Karl's therapist. These actions are not consistent with abandonment as defined under North Carolina law.
 

 Furthermore, the fact that Respondent did not visit Karl between 10 April 2014 and the 4 May 2015 hearing cannot be taken as evidence of abandonment.
 
 The trial
 

 *276
 

 court's findings indicate that Respondent was denied visitation during that period because "the Petitioner declined her request on the grounds that the child's therapist determined that visits should be suspended indefinitely...."
 
 Thus, this lack of contact was not voluntary and therefore cannot support a finding that
 
 *875
 
 Respondent intended to abandon Karl.
 
 See
 

 In re T.C.B.
 
 ,
 
 166 N.C. App. 482
 
 , 486-87,
 
 602 S.E.2d 17
 
 , 20 (2004) (holding that trial court's conclusion of abandonment was not supported by its findings regarding lack of visits given that respondent's attorney instructed him not to have any contact with child and subsequent protection plan disallowed visitation).
 

 Id.
 

 at ----,
 
 805 S.E.2d at 301-02
 
 (emphasis added).
 

 Even if respondent's reason for failing to visit with the child prior to the hearing in the 2014 termination action was the therapist's recommendation, there is no finding of fact in the order on appeal regarding respondent's reasons for her continued failure to visit or contact the child
 
 in the six months prior to the filing of the new petition in 2016
 
 . Despite reversal of the 2015 order terminating her parental rights-which essentially gave respondent a second chance to assert her rights as a parent-she
 
 still
 
 did not have even minimal contact with the child. The trial court made unchallenged findings of fact that petitioner has had the same cell phone number since 2006, and this number was the primary way respondent had contacted him in the past. In addition, the trial court found that respondent had in the past contacted the paternal grandmother, but she has "not done so in several years." The trial court also found that petitioner had the same "home phone number for over three years" but respondent did not call at that number either. Respondent also did not appear at the hearing of this matter, although her counsel had advised her several times, in writing and by telephone, of the court date and advised her "that she needed to be present." There was no evidence and no finding of fact that petitioner prevented respondent from having contact with the child since 2014.
 

 The operative facts supporting the trial court's conclusion of abandonment were based upon the six months immediately preceding the filing of the 2016 petition. Although the history of the child and actions of the respondent prior to the filing of the 2014 petition is the same as it was in 2014, time does not stand still. The law of the case doctrine does not prevent termination of respondent's parental rights based upon her abandonment during the six months next preceding the filing of the
 
 *277
 
 second petition.
 
 See
 

 Bank of America, N.A.
 
 at ----,
 
 780 S.E.2d at 880
 
 . Respondent has not presented any other issues for this Court's review. We affirm the trial court's termination judgment.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge BRYANT concur.
 

 [1]
 

 A pseudonym is used to protect the identity of the juvenile and for ease of reading.