Chisum v. Campagna, 2017 NCBC 61.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

16 CVS 2419

DENNIS D. CHISUM, individually
and derivatively on behalf of JUDGES
ROAD INDUSTRIAL PARK, LLC,
CAROLINA COAST HOLDINGS,
LLC, and PARKWAY BUSINESS
PARK, LLC,

           Plaintiff,


      v.

ROCCO J. CAMPAGNA, RICHARD
J. CAMPAGNA, JUDGES ROAD
INDUSTRIAL PARK, LLC,
CAROLINA COAST HOLDINGS,
LLC, PARKWAY BUSINESS PARK,
LLC,

           Defendants.

**OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon Plaintiff's Second Motion for Partial Summary Judgment ("Pl.'s Second Motion for SJ"). Plaintiff seeks an order granting partial summary judgment in Plaintiff's favor on his claim for declaratory judgment (Fifteenth Claim for Relief in Pl.'s Amended Complaint) against Defendants Rocco J. Campagna, Richard J. Campagna, and Judges Road Industrial Park, LLC.[1]

Also before the Court is Defendants' Motion for Summary Judgment raised by Defendants in their Memorandum of Law in Opposition of Second Motion for Partial

---

[1] Although Pl.'s Second Motion for SJ seeks summary judgment only as to Plaintiff's declaratory judgment claim involving Judges Road and not the other Defendant limited liability companies, the response in opposition was filed on behalf of all of the Defendants. Accordingly, the Court will refer to the responding party as "Defendants."

Summary Judgment ("Defendants' Motion"; collectively with Pl.'s Second Motion for SJ, the "Motions") pursuant to North Carolina Rule of Civil Procedure 56(c) ("Rules"). Although the Defendants' Motion is not particularly clear on this point, Defendants appear to seek summary judgment in their favor only as to Plaintiff's claim for a declaratory judgment. The Court, in its discretion, will consider Defendants' Motion only as it applies to Plaintiff's declaratory judgment claim regarding Judges Road Industrial Park, LLC. *Rutherford Mgmt. Corp. v. Town of Columbus*, 2005 N.C. App. LEXIS 23, *7–8 (2005) (holding that "[i]t is well-established that 'summary judgment may be entered upon less than the entire case,'" and that the trial court properly did not address a claim that was not specifically raised by the defendant in its motion for summary judgment).

The Court, having considered the Motions, the evidentiary materials filed by Plaintiff and Defendants, the briefs of the parties in support of and opposition to the Motions, and other appropriate matters of record, finds and concludes that the Pl.'s Second Motion for SJ should be GRANTED, in part, and DENIED, in part, and Defendants' Motion should be DENIED for the reasons set forth below.

> *Whitfield Bryson & Mason LLP, by Mathew E. Lee, Esq. and Jeremy R. Williams, Esq. and Sigmon Law, PLLC, by Mark Sigmon, Esq. for Plaintiff.*

> *Shipman & Wright, LLP, by W. Cory Reiss, Esq., Gregory M. Katzman, Esq., and James T. Moore, Esq. for Defendants*

McGuire, Judge.

## I. *Introduction.*

1. This action arises, in part, from Plaintiff Dennis Chisum's ("Plaintiff") claim that he currently has a membership interest in Defendant Judges Road Industrial Park, LLC ("Judges Road"). Rocco Campagna ("Rocco") and Richard Campagna ("Richard") (collectively, Rocco and Richard will be referred to as the "Campagnas") contend that Plaintiff's membership interest in Judges Road has been dissolved or extinguished due to his failure to meet certain capital calls made by Judges Road. In Pl.'s Second Motion for SJ, Plaintiff contends that under Judges Road's Operating Agreement his membership interest in the LLC could not be extinguished for failure to meet capital calls, but only proportionally reduced, and that as a matter of law, he still holds a membership interest in Judges Road.

2. In Pl.'s Second Motion for SJ, Plaintiff seeks "partial summary judgment on liability only" concerning his claim for declaratory judgment. Specifically, Plaintiff seeks an order as to "his status as an owner/member of Judges Road . . . leaving the issue of his ownership percentage for further discovery and adjudication." (Pl.'s Second Mot. SJ 1–2.)

3. Defendants oppose Pl.'s Second Motion for SJ, and seek summary judgment in their favor regarding Plaintiff's declaratory judgment claim on the grounds that Plaintiff's claim is barred by the statute of limitations.

**II.** *Procedural Background*.

4.     On July 16, 2016, Plaintiff filed this action in the Superior Court of New Hanover County against the Campagnas, Judges Road, Carolina Coast Holdings, LLC ("CCH"), and Parkway Business Park, LLC ("Parkway").

5.     On August 19, 2016, this matter was designated to the North Carolina Business Court by Chief Justice Mark Martin of the North Carolina Supreme Court. On August 23, 2016, this case was assigned to the undersigned by order of the Honorable James L. Gale, Chief Judge of the North Carolina Business Court.

6.     On January 6, 2017, Plaintiff filed a Motion for Leave to File Amended Complaint that included Plaintiff's proposed Amended Complaint as an attachment.

7.     On January 23, 2017, Plaintiff filed a Motion for Partial Summary Judgment.

8.     On February 7, 2017, the Court granted Plaintiff leave to file the Amended Complaint, and on February 8, 2017, Plaintiff filed the Amended Complaint in the same form as attached to the Motion for Leave to File Amended Complaint. The Amended Complaint stated claims against the Campagnas and the LLCs for, *inter alia*: breach of fiduciary duty; constructive fraud; civil conspiracy; conversion; fraud in the inducement; failure to pay distributions; unjust enrichment; unfair and deceptive trade practices; declaratory judgment; and judicial dissolution.

9.     On February 8, 2017, Plaintiff filed Pl.'s Second Motion for SJ.

10. On March 20, 2017, Defendants filed their Memorandum of Law in Opposition of Second Motion for Partial Summary Judgment ("Defs.' Memorandum in Opposition").

11. On April 21, 2017, Plaintiff filed a reply in support of Pl.'s Second Motion for SJ. The reply also contained Plaintiff's response in opposition to Defendants' Motion.

12. Pl.'s Second Motion for SJ and the Defendants' Motion have been fully briefed and are now ripe for determination. Pursuant to Business Court Rule 7.4 ("BCR"), the Court decides the Motions without hearing.

### III. *Facts.*

13. The following facts are not in dispute, except where expressly noted.

14. In the mid-1990s, Plaintiff and the Campagnas began developing commercial property in Wilmington, North Carolina. In 1996, Plaintiff and the Campagnas formed Judges Road. Judges Road owned a single, vacant parcel of land on which the members planned to build a mini-storage facility.

15. On February 15, 1996, Plaintiff and the Campagnas entered into the written "Operating Agreement of Judges Road" ("Operating Agreement"). (Am. Compl. ¶ 8, Ex. A.) The Operating Agreement provides, *inter alia*, the following definitions:

> 1.1(e) "Capital Contribution" means any contribution to the capital of the Company in cash or property by a Member whenever made and "Capital Unit" shall represent the unit value assigned to each capital contribution which shall be one unit for each $1,000.00 contribution.
> …

1.1(j) "<u>Initial Contribution</u>" means the initial contribution to capital of the Company made by a Member pursuant to Section 8.1(a) of this Agreement.

…

1.1(p) "<u>Membership Interest</u>" means all of a Member's rights in the Company, including without limitation, the Member's share of the profits and losses of the Company, the rights to receive distributions of the Company's assets, any right to vote and any right to participate in the management of the Company as provided in the [North Carolina Limited Liability] Act and this Agreement. As to any Member, Membership Interest shall mean the percentage set forth opposite such Member's name on <u>Schedule I</u> hereto.

16. The Operating Agreement sets out Plaintiff and the Campagnas' initial capital contributions to Judges Road, and permits the Manager(s) to make additional capital calls under certain circumstances. Sections 8.1(a) and (b) of the Operating Agreement provide, in pertinent part, as follows:

8.1(a) Upon execution of this Agreement, each Member agrees to contribute cash to the Company in the amount set forth as the Initial Capital Contribution of such Member on Schedule I, attached hereto.

8.1(b) If the Managers determine that the Initial Capital Contributions are insufficient to carry out the purposes of the Company, the Managers may request that the Members make additional contributions to the capital of the Company. If a Majority in Interest of the Members approve such request, then each of the Members shall be obligated to make such additional contributions (each an "additional Capital Contribution") to the Company ratably in accordance with such Members' then existing Membership Interest within the time period approved by the Majority in Interest of the Members. In the event any Members [*sic*] fails to fulfill any commitment to contribute additional Capital (the "Defaulting Member"), the Managers may elect to allow the remaining Members (the "Lending Members") to contribute to the Company, pro rata by Membership Interest, such Additional Capital

Contribution. Any Member who makes a contribution to the Company pursuant to this Article for another Member shall have the option to (i) treat the contribution as additional capital of the Company, or (ii) treat the contribution as a loan to the defaulting Member, which election shall be made, in writing, at the time the contribution is made. If the contributing Member elects to treat his contribution as additional capital, such funds shall be allocated toward the purchase of additional capital ownership. After such contributions are made, each Member percentage interest in the profits, losses and cash flow of the Company shall be adjusted and determined by dividing the aggregate shares of all the Members in the Company into the aggregate shares of each Member. The resulting quotient with respect to each Member shall be the adjusted percentage interest of such Member. Such adjusted percentage interest of each Member shall supersede the percentage interest of such Member as set forth in Schedule I.

17. The Campagnas originally owned their interest in Judges Road through The Camp Group, a partnership in which Richard and Rocco were each 50% partners.

Schedule I of the Operating Agreement provided as follows:

| Name & Address of Members: | Initial Capital Contribution | Initial Capital Units | Membership Interest |
|---|---|---|---|
| The Camp Group, A N.C. General Partnership 6631 Amsterdam Way Wilmington, NC 28405 | $62,855 | 62.855 | 65% |
| Dennis D. Chisum | $33,845 | 33.845 | 35% |

18. The Operating Agreement named the Camp Group as the initial Manager of Judges Road.

19. In 2001, the Camp Group transferred its interest in Judges Road to Rocco and Richard individually, and the parties reassigned their respective

ownership interests such that Plaintiff, Rocco, and Richard each had a 33.333% Membership Interest in Judges Road. (Defs.' Mem. Opp. Ex. 2.)

20. From 2007 through 2009, Plaintiff sold and assigned portions of his ownership interest in Judges Road to the Campagnas through a series of transactions. (Defs.' Mem. Opp. Exs. 5, 9, 10, and 11.) As of 2010, the Membership Interests in Judges Road were as follows: Plaintiff—18.884%; Rocco—40.558%; and Richard—40.558%. (Pl.'s Mem. Supp. Second Mot. SJ Ex. 1 ¶ 14.)

21. On November 29, 2007, the members amended the Operating Agreement to name Richard Campagna as the Manager for Judges Road. (Defs.' Mem. Opp. Ex. 3.)

22. On June 25, 2012, James MacDonald, attorney for Judges Road, mailed a letter to Plaintiff notifying him of a capital call for Judges Road, and a Notice of Meeting of Members to Consider Amendment of the Operating Agreement ("Notice"). (Defs.' Mem. Opp. 3–4, Ex. 12.) The letter stated that Judges Road was making a capital call in the amount of $100,000.00, and that Plaintiff was required to pay $16,666.66 as his share of the capital call. Plaintiff claims he did not receive the letter or Notice. (Pl.'s Mem. Supp. Second Mot. SJ Ex. 6 ¶¶ 4–5.)

23. On July 2, 2012, the Campagnas held a meeting of the members of Judges Road ("Members Meeting"). Plaintiff did not attend the Members Meeting. In the Members Meeting, the Campagnas passed motions "to direct [Judges Road]'s accountant to dilute the membership interest of [Plaintiff] for his failure to meet and make his outstanding and delinquent capital call of $16,666.66." (Pl.'s Mem. Supp.

Second Mot. SJ Ex. 4.) The Campagnas also purported to amend section 8.1(b) of the Operating Agreement to permit a member's interest to be "diluted" to 0% under certain circumstances for failure to meet a capital call. (Pl.'s Mem. Supp. Second Mot. SJ Exs. 3 and 4.) Plaintiff contends that the amendment was not properly adopted pursuant to the Operating Agreement, and Defendants concede that the amendment need not be considered for purposes of deciding Pl.'s Second Motion for SJ. (Defs.' Mem. Opp. 14–15.)

24. On August 27, 2012, the Campagnas paid the entire $100,000.00 capital call for Judges Road, including Plaintiff's portion. (Pl.'s Mem. Supp. Second Mot. SJ Ex. 1 ¶¶ 18–19.) The Campagnas contend that Plaintiff's 18.8845% membership interest in Judges Road was dissolved at the July 2, 2012 meeting, and that Richard and Rocco each now hold a 50% Membership Interest in Judges Road.[2] (Pl.'s Mem. Supp. Second Mot. SJ Ex. 1 ¶¶ 18, 20.)

25. The Campagnas contend that Plaintiff did not participate in the management of Judges Road nor did he inquire about his status as a member from 2012 until 2016. (Defs.' Mem. Opp. 4–7.) Plaintiff claims that he did not have any information that would have lead him to question his continuing status as a member of Judges Road until, at the earliest, September 2014. (Pl.'s Reply 19–20.)

---

[2] This appears to be incorrect. Under the Operating Agreement, Plaintiff's interest would not have been impacted until another member or members paid Plaintiff's obligation towards the whole of the capital contribution. This would mean Plaintiff's interest would not have been extinguished until Rocco and Richard made the contribution for Plaintiff on August 27, 2012.

**IV.** *Analysis.*

26. Both parties have moved for partial summary judgment regarding Plaintiff's claim for declaratory judgment. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as matter of law. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). An issue is "material" if its "resolution . . . is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). The moving party bears "the burden of clearly establishing  lack of a triable issue" to the trial court and may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747. All evidence is viewed in the light most favorable to the nonmoving party with the benefit of all reasonable inferences. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

27. The Court will first address Defendants' Motion because in the event Plaintiff's claim for declaratory judgment is barred by the statute of limitations, Pl.'s Second Motion for SJ must be denied as moot.

A. Defendants' Motion.

28. Defendants have requested that summary judgment be entered against Plaintiff under Rule 56(c). *Elliott v. Enka-Candler Fire & Rescue Dep't, Inc.*, 213 N.C.

App. 160, 170–71, 713 S.E.2d 132, 139–40 (2011) (noting that Rule 56(c) allows the trial court to grant summary judgment to the non-moving party). Defendants argue Plaintiff's claim for conversion is the "underlying claim" on which the declaratory judgment cause of action is premised. (Defs.' Mem. Opp. 16.) Defendants contend that since the alleged conversion occurred in or around the July 2, 2012 Member Meeting, more than four years before Plaintiff initiated this action, the claim for conversion is thus barred by the three year statute of limitations in G.S. 1-52(4). (Defs.' Mem. Opp. 16–18.) Defendants argue that because Plaintiff's conversion claim is barred by the statute of limitations, his claim for declaratory judgment is barred as well. The Court is not persuaded by this argument.

29. As an initial matter, Defendants' contention that Plaintiff's declaratory judgment action must be premised on another "underlying claim" is incorrect. "Although a declaratory judgment action must involve an actual controversy between the parties, plaintiffs are not required to allege or prove that a traditional cause of action exists against defendant[s] in order to establish an actual controversy." *Conner v. N.C. Council of State*, 365 N.C. 242, 258, 716 S.E.2d 836, 846 (2011) (quoting *Goldston v. State*, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006)). Here, the Amended Complaint alleges an actual controversy between Plaintiff and Rocco and Richard over their respective rights and obligations as members of Judges Road, irrespective of the claim for conversion.

30. Additionally, the Court cannot find, and Defendants have not referenced, any North Carolina authority citing to a specific statute of limitations for

a declaratory judgment claim. Rather, the decisions of North Carolina's appellate courts suggest that the timeliness of a declaratory action should be challenged by a defense of laches. *See, e.g.*, *Taylor v. Raleigh*, 290 N.C. 608, 622–23, 227 S.E.2d 576, 584–85 (1976) ("Since proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings."); *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 89, 712 S.E.2d 221, 230–31 (2011) (analyzing timeliness of claim under laches and holding that laches was "an appropriate defense to [plaintiff]'s claim for declaratory judgment."). Defendants have not argued that laches should apply to Plaintiff's declaratory judgment claim.

31. Additionally, Defendants' reliance on *Ludlum v. State,* 227 N.C. App. 92, 742 S.E.2d 580 (2013), in support of their argument is misplaced. In *Ludlum*, the plaintiff sought and was denied benefits by the State of North Carolina under a State retirement program for members of the National Guard. Over four years after being notified that his claim for benefits was denied, the plaintiff filed suit against the State of North Carolina claiming breach of contract and violation of his statutory rights to benefits. *Id.* at 93, 742 S.E.2d at 581–82. The plaintiff also sought a declaratory judgment that the State wrongfully denied him retirement benefits. *Id.* The trial court dismissed the plaintiff's claim for declaratory relief on the grounds that it was barred by the statute of limitations, and the plaintiff appealed. *Id.*

32. The Court of Appeals affirmed the trial court, holding that:

> Plaintiff's claims were properly dismissed under the [Declaratory Judgment] Act if the statute of limitations

> bars any claim, because "jurisdiction under the Declaratory Judgment Act may be invoked only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute" . . . . Therefore, if the statute of limitations was properly applied to plaintiff's underlying claims, no relief can be afforded under the Declaratory Judgment Act.

*Id.* at 94, 742 S.E.2d at 582 (citation omitted). The Court of Appeals concluded that the plaintiff's claims for breach of contract and for violation of statutory rights were governed by three year statutes of limitations and barred as untimely. *Id.* The Court apparently concluded that since the plaintiff's claims for retirement benefits were barred, there was no "existing controversy" between the parties on which it could award declaratory relief and that the claim for declaratory judgment also was barred. *Ludlum*, 227 N.C. App. at 95, 742 S.E.2d at 583.

33. The Court's decision in *Ludlum* appears to be based on the conclusion that since all of the plaintiff's claims upon which he sought to recover the retirement benefits were barred, no actual controversy existed between the parties and a declaration that the State of North Carolina breached an agreement with the plaintiff or violated the statute entitling the plaintiff to retirement benefits would be a futile exercise. Here, however, even if the conversion claim is time-barred, it is not the only cause of action under which Plaintiff could recover against the Campagnas and Judges Road. Defendants have not addressed the timeliness of most of Plaintiff's other claims, including his claim for constructive fraud, which is subject to a ten-year statute of limitations. *NationsBank v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000) ("A claim of constructive fraud based upon a breach of a fiduciary

duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56."). The claim for constructive fraud will necessarily involve a determination of whether the Campagnas breached fiduciary duties owed to Plaintiff by claiming to have extinguished Plaintiff's Membership Interest in Judges Road pursuant to section 8.1(b) of the Operating Agreement, and the parties have an existing and actual controversy over the construction of section 8.1(b).

34.     As there is an actual and existing controversy between Plaintiff and the Defendants based upon a claim that is not time-barred, Defendants' Motion should be DENIED.

B.  Pl.'s Second Motion for SJ.

35.     Under North Carolina law, a declaratory judgment is a statutory remedy that grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. G.S. § 1-253; *Pine Knoll Shores v. Carolina Water Serv.*, 128 N.C. App. 321, 321, 494 S.E.2d 618, 618 (1998). The Court may, by declaratory judgment, "determine[ ] questions of construction or validity" and declare "rights, status, and other legal relations" under a written contract. G.S. § 1-254. The presence of a real or existing controversy between adverse parties, however, is an essential requirement of any declaratory judgment action. Summary judgment may be granted on a claim for declaratory judgment if there remains no issues of material fact and either party is entitled to relief as a matter of law. *Smith v. Marez*, 217 N.C. App. 267, 270, 719 S.E.2d 226, 229 (2011) (internal citation omitted).

### i.     Nature of the declaratory relief.

36.     The specific nature of the declaratory relief Plaintiff seeks is not clear. In the Amended Complaint, Plaintiff alleges as follows:

> Plaintiff Dennis Chisum is entitled to a declaratory judgment . . . stating that he is an owner in each of the Chisum/Campagna LLCs as set forth herein and entitled to distributions from Chisum/Campagna LLCs in accordance with the fair market value of his ownership interests plus interest at the legal rate from the date such distributions were due until the date of payment.

(Am. Compl. ¶ 157.)

37.     In Pl.'s Second Motion for SJ, however, Plaintiff states that he is seeking a declaration regarding only "his status as an owner/member of the Judges Road [LLC], leaving the issue of his ownership percentage for further discovery and adjudication." (Pl.'s Second Mot. SJ 1–2.)  In Pl.'s Second Motion for SJ, Plaintiff also contends that "the operating agreement for Judges Road does not permit a member's interest to be dissolved for failing to meet a capital call. Accordingly, [Plaintiff]'s ownership interest could not have been dissolved in its entirety by the Campagnas." (Pl.'s Second Mot. SJ ¶¶ 13–14.) Plaintiff further contends that "[t]he interpretation of the Judges Road operating agreement is a matter of law, and the determination of [Plaintiff]'s status as an owner at this stage will narrow the disputed issues in this litigation." (Pl.'s Second Mot. SJ ¶ 16.)

38.     Despite Plaintiff's statements in the Amended Complaint and Pl.'s Second Motion for SJ regarding the declaratory relief he seeks, in their briefs the parties' arguments focus almost exclusively on the construction to be given section 8.1(b) of the Operating Agreement. Plaintiff argues that the plain language of section

8.1(b) establishes that a member's Membership Interest cannot be extinguished through contributions of capital by other members, but only proportionately reduced to a smaller interest. Defendants contend that the language of section 8.1(b) permits members to acquire the interest of a non-contributing member up to and including extinguishing the non-contributing member's interest entirely.

39. Neither party has argued, nor can the Court conclude at this stage of the proceeding, that the only means by which Plaintiff could have lost his ownership interest in Judges Road was under section 8.1(b) of the Operating Agreement. Since the record establishes that Plaintiff sold or otherwise assigned parts of his membership interest in Judges Road to the Campagnas at various times, the Court simply cannot conclude that Chisum is still an owner of Judges Road based on the evidence and arguments currently before it. Additionally, the parties have presented no evidence or argument regarding Plaintiff's entitlement to distributions from Judges Road. Therfore, to the extent Plaintiff seeks summary judgment in his favor on the question of whether he has retained an ownership interest in Judges Road, or whether he is entitled to distributions or other relief from Judges Road, or the Campagnas, the Motion should be DENIED without prejudice.

40. On the other hand, the content of Pl.'s Second Motion for SJ, the evidence in the record, and the parties' arguments have raised the question of whether, as a matter of law, section 8.1(b) of the Operating Agreement permits a member's Membership Interest in Judges Road to be extinguished when the member fails to make capital contributions in response to capital calls and another member

or members make the capital contribution for the non-contributing member. This question is appropriate for the Court's determination since it involves only the construction of the Operating Agreement and will resolve a significant issue of dispute between the parties.

## ii. Construction of the Operating Agreement.

41. G.S. § 57D-2-30(e) provides that the laws of contract "govern the administration and enforcement of operating agreements." *See also N.C. State Bar v. Merrell*, 777 S.E.2d 103, 114, 2015 N.C. App. LEXIS 820, *28 (2015) ("An [LLC] operating agreement is a contract.").

42. "With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract." *Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 456, 750 S.E.2d 205, 209 (2013). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Id.*; *Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 204 (2010). Whether or not the language of a contract is ambiguous is a question for the court to determine. *Lynn*, 202 N.C. App. at 432, 689 S.E.2d at 205.

43. In determining whether the Operating Agreement permits Plaintiff's interest in Judges Road to be extinguished through his failure to adequately respond to capital calls, "[t]he court must construe the contract 'as a whole' and [its provisions] must be 'appraised in relation to all other provisions.'" *Schenkel & Shultz, Inc. v.*

*Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008). "It is presumed that each part of the contract means something." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 393, 390 S.E.2d 150, 153 (1990). "The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011). With these principles of construction in mind, the Court analyzes the Operating Agreement.

44.    The Court first looks to the definitions of certain critical words and terms provided by the Operating Agreement. The Operating Agreement specifically provides that a "'Capital Contribution' means any contribution to the capital of the Company in cash or property by a Member *whenever made* . . . ." (Op. Agreement § 1.1(e)) (emphasis added). "Capital Contribution" includes the "Initial Capital Contribution" of each member as set out in Schedule I to the Operating Agreement (Op. Agreement §§ 1.1(j) and 8.1(a),) and any "Additional Capital Contribution." (Op. Agreement § 8.1(b).) A "Capital Unit" is assigned to a member for each $1,000.00 in Capital Contribution made by the member. (Op. Agreement § 1.1(e), Schedule I.) A member's "Membership Interest" in Judges Road is determined by dividing the number of Capital Units held by the member by the total aggregate number of Capital Units held by the members of Judges Road. (Op. Agreement § 1.1(o), Schedule I.)

45.    The critical language in section 8.1(b) of the Operating Agreement provides that:

> Any Member who makes a contribution to the Company
> pursuant to this Article for another Member shall have the

option to (i) treat the contribution as additional capital of the Company . . . . If the contributing Member elects to treat his contribution as additional capital, such funds shall be allocated toward the purchase of additional capital ownership. After such contributions are made, each Member percentage interest . . . shall be adjusted and determined by dividing the aggregate shares of all the Members in the Company into the aggregate shares of each Member. The resulting quotient with respect to each Member shall be the adjusted percentage interest of such Member. Such adjusted percentage interest of each Member shall supersede the percentage interest of such Member as set forth in Schedule I.

46. The plain language in section 8.1(b) comports with the definitions outlined in section 1.1 of the Operating Agreement. When a member fails to pay a capital call (hereinafter, "non-contributing member"), and another member (hereinafter, "contributing member") elects to make the payment for the non-contributing member, the contributing member "purchase[s] . . . additional capital ownership," and Judges Road credits the contributing member with one additional Capital Unit for each $1,000.00 contributed. (Op. Agreement § 8.1(b).) This, in turn, increases the number of Capital Units held by the contributing member, and the total number of issued and outstanding Capital Units in Judges Road. Each member's adjusted Membership Interest is then determined by dividing the number of Capital Units held by the member by the new aggregate number of outstanding Capital Units held by all members. As a result, the contributing member's Membership Interest proportionally increases, and the non-contributing member's Membership Interest proportionally decreases.

47. The Court recognizes that section 8.1(b) uses the word "shares"[3] instead of Capital Units in describing the process for adjusting Membership Interests after the purchase of the additional Capital Units by the contributing member. Read in context, however, the reasonable and logical interpretation is that "shares" means Capital Units, particularly because the language ties the adjusted Membership Interest to Schedule I.

48. The Court's construction of section 8.1(b) also permits that section to be harmonized with section 10.6(f) of the Operating Agreement. Section 10.6(f) provides the method for valuing a member's Membership Interest in Judges Road when that interest is voluntarily sold. First, the Company's "adjusted value" is determined. (Op. Agreement § 10.6(f)(i)—(v).) The price to be paid for the Membership Interest is then calculated as follows:

> The purchase price of the Seller's capital interest shall be the adjusted value of the Company divided by the number of capital units outstanding and multiplied by the number of capital units owned by the Seller.

(Op. Agreement § 10.6(f)(vi).)

49. Defendants contend that under section 8.1(b) a contributing member purchases Capital Units held by the non-contributing member, and is not credited with new or additional Capital Units for covering the non-contributing member's capital call obligation. Specifically, Defendants argue:

> Judges Road consists of 96.7 finite units . . . . The Operating Agreement contains no provision for increasing the number of capital units after the initial capital contribution, as referenced in § 1.1(e) . . . . Therefore, the additional capital

---

[3] The word "shares" is neither defined nor used elsewhere in the Operating Agreement.

ownership must be purchased from the non-contributing member.

(Defs.' Mem. Opp. 10–11.)

50.     Defendants' contention simply is incorrect and cannot be squared with the terms of the Operating Agreement or plain language of section 8.1(b). First, the Operating Agreement does not state that the original 96.7 Capital Units in Judges Road are "finite," nor does it prohibit the issuance of additional Capital Units. To the contrary, the Operating Agreement distinguishes between the Initial Capital Contributions, which resulted in 96.7 Capital Units being credited to the members, and other Capital Contributions "whenever made." (Op. Agreement §§ 1.1(e) and 1.1(j).) The definition of Capital Contribution in section 1.1(e) of the Operating Agreement expressly provides that each $1,000.00 of capital contributed to Judges Road shall have a value of one Capital Unit.

51.     Second, the Operating Agreement provides that a member's Membership Interest can be transferred, including by sale, only in accordance with section 10.6. (Op. Agreement §§ 10.1 and 10.2.) Section 10.6(a) provides as follows:

> Offer of Membership Interest. If any Member (referred to as the "Seller") desires to sell or otherwise transfer all or any portion of his interest (capital units) in the Company to any person or entity, said Seller shall give the other Members at least thirty (30) days written notice of his intention to sell or otherwise transfer all or any portion of his interest in the Company. Such written notice shall include an offer to sell to Company and the other Members, in that order, the portion of the Seller's capital interest in the Company which is subject to the notice.

The Operating Agreement contains no other provision specifically addressing the transfer of one member's Membership Interest to another member, and it does not address any procedure for the involuntary transfer of one's Membership Interest.

52.     The Court has thoroughly considered the language in section 8.1(b) of the Operating Agreement and concludes that it is unambiguous and does not permit a member's Membership Interest to be diluted to zero, or extinguished, by his failure to contribute capital in response to a capital call. The unambiguous language of the Operating Agreement provides that a contributing member making a Capital Contribution for a non-contributing member is credited with one additional Capital Unit for each $1,000.00 of "Additional Capital" contributed. (Op. Agreement §§ 1.1(e) and 8.1(b).) Each member's Membership Interest is then adjusted by dividing the member's aggregate Capital Units by the new total aggregate number of Capital Units held by all members. (Op. Agreement § 8.1(b).) As a result, the contributing member's Membership Interest proportionally increases, and the non-contributing member's Membership Interest proportionally decreases. Since the non-contributing member is not required to sell his Capital Units to the contributing member, the non-contributing member's Membership Interest can be proportionally reduced in relation to the total number of Capital Units outstanding, but can never be reduced to zero. As to whether the Operating Agreement permits a member's Membership Interest in Judges Road to be extinguished through his failure to make capital contributions in response to capital calls, Pl.'s Second Motion for SJ should be GRANTED.

THEREFORE, IT IS ORDERED that Pl.'s Second Motion for SJ is GRANTED, in part, and DENIED, in part, and the Defendants' Motion is DENIED, as follows:

1. Pl.'s Second Motion for SJ is GRANTED to the extent that Plaintiff seeks a declaration that, as a matter of law, section 8.1(b) of the Operating Agreement would not permit a member's interest to be diluted to zero, or extinguished entirely, by the failure to contribute capital in response to a capital call. Accordingly, the Court enters the following declaration pursuant to G.S. § 1-254 regarding the rights, status, and other legal relations of the parties to this action pursuant to section 8.1(b) of the Operating Agreement:[4]

> Section 8.1(b) of the Operating Agreement of Judges Road is unambiguous and does not permit a member's membership interest to be diluted to zero, or extinguished, by failure to contribute capital in response to a capital call. The unambiguous language provides that a contributing member making a capital contribution for a non-contributing member is credited with one additional Capital Unit for each $1,000.00 of "Additional Capital" contributed. Each member's Membership Interest is then adjusted by dividing the number of Capital Units held by the member by the new total aggregate number of Capital Units held by all members. As a result, the contributing member's Membership Interest proportionally increases, and the non-contributing member's Membership Interest proportionally decreases. Since the non-contributing member is not required to sell his Capital Units to the contributing member, the non-contributing member's Membership Interest can be proportionally reduced in relation to the total number of Capital Units outstanding, but can never be reduced to zero by failure to make a contribution in response to a capital call.

---

[4] This declaration is not intended to apply to any claims regarding the effectiveness of the purported July 2, 2012, amendment to section 8.1(b) of the Operating Agreement of Judges Road, or as an interpretation of the language contained in the purported amendment.

2.     Pl.'s Second Motion for SJ regarding a declaration that Plaintiff retains an ownership interest in Judges Road, or that Plaintiff is entitled to distributions or other relief from Judges Road or the Campagnas, is DENIED.

3.     Defendants' Motion is DENIED.

This the 20th day of July, 2017.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases